OPINION
ANDERSON, Justice.
The question presented by this case is whether the good-faith, exception to the exclusionary rule articulated in Davis v. United States, — U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), should apply in Minnesota. Appellant/cross-respondent Bonnie Ann Lindquist was convicted of third-degree driving while impaired (DWI). At trial, the district court admitted test results showing Lindquist’s alcohol concentration that were based on a warrantless blood draw. While Lind-quist’s case was on direct appeal, the Supreme Court decided Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), which held that the dissipation of alcohol in the blood does not create a single-factor exigency justifying a warrantless blood draw of suspected drunk drivers. Lindquist now challenges her blood draw as unconstitutional under McNeely. Although we hold that McNeely applies to cases on direct review at the time of decision, we also hold that the test results from Lindquist’s warrantless blood draw, even if unconstitutionally obtained, do not need to be suppressed because the officer who facilitated the blood draw acted in objectively reasonable reliance on bind- • ing appellate precedent. We therefore affirm the conviction.
On February 19,' 2011, officers responded to a single-vehicle accident on a rural road in Aitkin County. A witness told the officers that one of the passengers sustained a head injury and that the occupants of the vehicle had fled. One officer learned that the vehicle involved in the accident belonged to Lindquist and her husband. Two officers drove to the Lind-quist residence and entered the home to locate the injured passenger. They found the Lindquists hiding in a closet. Lind-quist’s husband, who initially claimed to be the driver, had facial bleeding but declined medical attention. The officers' later determined that Lindquist, not her husband, was the driver.
The officers observed that Lindquist had slurred speech, an unsteady gait, and red eyes. She also failed field sobriety tests. After declining, a preliminary breath test, Lindquist was placed under arrest and transported to a hospital for a blood draw. The officer who facilitated the blood draw did not read the Minnesota implied consent advisory, see Minn.Stat. § 169A.51, subd. 2(a)-(b) (2014), and sought neither consent nor a warrant for the blood draw. He testified that it was “procedure” at the time to “go straight to ithe blood” when responding to an accident involving injury. Lindquist’s alcohol concentration was measured at .23 approximately 2 hours after driving.
Respondent State of Minnesota charged Lindquist with two counts of criminal vehicular operation, Minn.Stat. § 609.21, subd. l(3)-(4), subd. la(d) (2012);[1] and. two counts of third-degree DWI, Minn.Stat. §§ 169A.20, subd. 1(1), 1(5), 169A.26 (2014). Lindquist did not move to sup *866 press the blood sample or the results of the alcohol-concentration test before the trial. A jury acquitted Lindquist of the criminal-vehicular-operation counts but found her guilty of both counts of third-degree DWI. Lindquist appealed, arguing insufficiency of the evidence, and the court of appeals affirmed. State v. Lindquist, No. A12-0599, 2013 WL 1392437, at *2-3 (Minn.App. Apr. 8, 2013), vacated and remanded, No. A12-0599, Order at 2-3 (Minn. filed Nov. 26, 2013).
Nine days after the release of the court of appeals opinion, the Supreme Court decided McNeely. Lindquist petitioned for review to determine whether, in light of McNeely, her blood draw was an unconstitutional search. We stayed proceedings pending final disposition in State v. Brooks, 838 N.W.2d 563 (Minn.2013), cert. denied, — U.S. -, 134 S.Ct. 1799, 188 L.Ed.2d 759 (2014). After deciding Brooks, we vacated the court of appeals’ decision and remanded for further proceedings in light of McNeely and Brooks.
On remand, the court of appeals again affirmed. State v. Lindquist, No. A12-0599, 2014 WL 996470, at *3 (Minn.App. Mar. 17, 2014). The court declined to consider Lindquist’s constitutional argument because she did not raise it in the district court or in her first appeal prior to our remand. Id. at *2. The State also urged the court of appeals to adopt the federal good-faith exception to the exclusionary rule articulated by the Supreme Court in Davis v. United States, — U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), but the court declined to do so. Lindquist, 2014 WL 996470, at *2. We granted Lindquist’s petition for review of (1) whether she forfeited her constitutional challenge based on McNeely by not raising the issue in the district court, and (2) whether the warrantless blood draw was constitutional under McNeely. We also granted review of the State’s request to adopt the good-faith exception articulated in Davis.
I.
First, we must determine whether Lindquist may properly assert a challenge based on Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), which is a legal question that we review de novo. State v. Houston, 702 N.W.2d 268, 270 (Minn.2005). In McNeely, the Supreme Court held that the rapid dissipation of alcohol in the body did not, by itself, establish that there were exigent circumstances justifying a warrantless blood draw from a suspected drunk driver. — U.S. at -, 133 S.Ct. at 1556. Instead, the Court recognized that exigent circumstances, based in part on the rapid dissipation of alcohol in a suspect’s body, may allow police to obtain a blood sample without a warrant, but that courts must determine whether an exigency exists based on the totality of the circumstances in each case. Id. at -, 133 S.Ct. at 1565-66. McNeely overruled our precedent holding that the rapid dissipation of alcohol in the body creates a single-factor exigency that supports a warrantless search of a suspected drunk driver. See State v. Netland, 762 N.W.2d 202, 212-14 (Minn.2009), abrogated in part by McNeely, — U.S. -, 133 S.Ct. 1552; State v. Shriner, 751 N.W.2d 538, 545 (Minn.2008), abrogated by McNeely, — U.S. -, 133 S.Ct. 1552.
Although the State acknowledges that McNeely applies to this case because Lindquist’s direct appeal was pending when McNeely was decided, it argues that Lindquist forfeited her McNeely challenge by not raising it in a motion to suppress at the district court. “As a general rule, district court errors — even those affecting constitutional rights — can be forfeited for *867 purposes of appeal by the failure to make a timely objection in the district court.” State v. Osborne, 715 N.W.2d 436, 441 (Minn.2006). Strict application of the forfeiture rule, however, can result in criminal defendants being unable - to benefit from a new rule of constitutional criminal procedure because defendants cannot predict changes in the law and often have little incentive to contest settled rules of law that have not been decided in favor of defendants in the past. See id. at 442.
We examined the effect of forfeiture on a new rule of constitutional criminal procedure in Osborne. After conviction of 28 drug-related offenses, Osborne was given an upward-durational sentencing departure. Id. at 439. Although Osborne argued against the upward departure, he did not argue that the imposed sentence was unconstitutional. See id. While Osborne’s case was on direct appeal, the Supreme Court decided Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held that facts, other than a prior conviction, used to enhance a sentence beyond the statutory maximum must be decided by a jury beyond a reasonable doubt or admitted by the defendant. Osborne, 715 N.W.2d at 440. We rejected the State’s argument that Osborne forfeited a constitutional challenge to his sentence based on Blakely because previously we had “consistently rejected any Blakely-type claim,” and a criminal defendant should not bear the risk of “failing to raise a new principle of law, then unknown to the parties and contrary to the well-established precedent of this court.” Id. at 442; see also id. (noting that a contrary result would “expect defendants to continue, for-malistically, to make motions or objections based on arguments that we have repeatedly rejected as being without legal merit”).
Like Blakely, McNeely is a new rule of constitutional criminal procedure that overruled our well-established precedent. As in Osborne, Lindquist’s case was on direct appeal when McNeely was announced, and the district court would have summarily rejected a suppression challenge to the warrantless blood draw under Netland and Shriner. Many — likely most and perhaps nearly all — defendants in Lindquist’s position will fail to bring a constitutional claim, either because similar claims have consistently been rejected in other cases, or because of the novelty of the new rule of law.
The State urges us to limit Osborne to Blakely-type challenges because a defendant must personally and affirmatively waive the right to a jury trial, see Osborne, 715 N.W.2d at 442-43, whereas a defendant may forfeit a constitutional challenge to evidence through silence. But, our recent decisions demonstrate that the Osborne forfeiture exception is not so narrow. In State v. Ali, 855 N.W.2d 235, 253 (Minn.2014), we permitted a juvenile to challenge his sentence based on Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which was decided while Ali’s case was on direct review. Ali based his challenge on the Eighth Amendment prohibition on cruel and unusual punishment, and so it did not involve a right that had to be personally waived by the defendant. Ali, 855 N.W.2d at 252-53. Citing Os-bome, we concluded that Miller applied. Id. at 253; see also State v. Beaulieu, 859 N.W.2d 275, 281 n. 5 (Minn.2015) (stating that the Osborne forfeiture exception applies when “an intervening change in the law excuse[s] the defendant’s failure to assert what would have otherwise been a futile objection in the district court.”).
We hold that Lindquist did not forfeit her right to challenge her warrantless blood draw because the Supreme Court’s *868 decision in McNeely was an intervening change in the law that excused Lindquist’s failure to bring what would have otherwise been a futile argument in the district court and court of appeals.
II.
We next consider whether to adopt the good-faith exception to the exclusionary rule articulated in Davis v. United, States, — U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).[2] We begin by examining the history of the exclusionary rule, as applied to the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution, both of which prohibit unreasonable searches and seizures.
A.
The exclusionary rule to the Fourth Amendment “is a prudential doctrine ... created by [the Supreme] Court to compel respect for the constitutional guaranty.” Davis, — U.S. at -, 131 S.Ct. at 2426 (citations omitted); see also United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (stating that the exclusionary “rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.”). It was first recognized as a remedy for Fourth Amendment violations in Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and was applied to the states through the Fourteenth Amendment in Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Although Mapp proclaims that “all evidence obtained by searches and seizures in violation of the Constitution is ... inadmissible in a state court,”' 367 U.S. at 655, 81 S.Ct. 1684, the Supreme Court has consistently restricted application of the exclusionary rule to “those areas where its remedial objectives are thought most efficaciously served.” Calandra, 414 U.S. at 348, 94 S.Ct. 613; see also Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (“Suppression of evidence ... has always been our last resort, not our first impulse.”).[3]
In particular, the Supreme Court has declined to apply the Fourth Amendment exclusionary rule in circumstances in which doing so would not serve the central purpose of deterring police misconduct. See Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (“The [exclusionary] rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.”); see also Arizona v. Evans, 514 U.S. 1, 14, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (“[T]he exclusionary rule was historically designed as a means of deterring police misconduct_”). Although the Court has noted other purposes of the exclusionary rule, deterring police *869 misconduct has become its touchstone. Compare Elkins, 364 U.S. at 217-18, 222-23, 80 S.Ct. 1437 (examining the exclusionary rule’s role in deterring police misconduct and maintaining judicial integrity), with Davis, — U.S. at -, 131 S.Ct. at 2432 (“[W]e have said time and again that the sole purpose of the exclusionary rule is to deter misconduct by law enforcement,”), and United States v. Peltier, 422 U.S. 531, 536, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) (“Decisions of this Court applying the exclusionary rule to unconstitutionally seized evidence have referred to ‘the imperative of judicial integrity,’ although the Court has relied principally upon the deterrent purpose served by the exclusionary rule.” (citation omitted));
Over the past 3 decades, the Supreme Court has limited the applicability of the exclusionary rule to the Fourth Amendment through a series of good-faith exceptions. In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court examined whether the exclusionary rule applies when police conduct a search in reasonable reliance on a facially valid warrant that is later determined to lack probable cause. The Court noted that the “substantial social costs” of excluding incriminating evidence outweighed the exclusionary rule’s benefit “when law enforcement officers have acted in objective good faith or their transgressions have been minor.” Id. at 907-08, 104 S.Ct. 3405, 82 L.Ed.2d 677. Application of the exclusionary rule is therefore unwarranted when exclusion “does not result in appreciable deterrence.” Id. at 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (citation omitted). Subsequent cases have extended the Leon good-faith exception to reasonable reliance on statutes later found unconstitutional, see Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), and reasonable reliance on an arrest warrant database, see Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (database managed by the police); Evans, 514 U.S. 1, 115 S.Ct. 1185 (database managed by the judiciary).
The most recent good-faith exception, and the one the State urges us to adopt, was articulated in Davis, — U.S. -, 131 S.Ct. 2419. In April 2007, police arrested Davis, handcuffed him, and placed him in a squad car. Id. at -, 131 S.Ct. at 2425. Police then searched the passenger compartment of the vehicle Davis had occupied before the arrest, where they found a revolver. Id. at -, 131 S.Ct. at 2425. At the. time, the car search was lawful under binding precedent. Id. at -, 131 S.Ct. at 2426. While Davis’s case was on direct appeal, the Supreme Court decided Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which applied to Davis’s case and rendered the search ■ unconstitutional. Davis, — U.S. at -, 131 S.Ct. at 2426.
The Court nevertheless held that “[e]vi-dence obtained during a search conducted in reasonáble rebanee on binding precedent is not subject to the exclusionary rule.” Id. at -, 131 S.Ct. at 2429. Suppressing the evidence would have no deterrent effect on police misconduct because “[t]he police acted in strict compliance with binding precedent.” Id. at —, 131 S.Ct. at 2428; see also id. at -, 131 S.Ct. at 2429 (“About all that exclusion would deter in this case is conscientious police work.”). The Court limited the exception to circumstances in which “binding appellate precedent specifically authorizes a particular police practice,” and police “scrupulously adhered to governing law.” Id. at -, 131 S.Ct. at 2429, 2434. Police efforts that are otherwise valid should not be rejected as a result of appellate judge error. Id. at -, 131 S.Ct. at 2429.
*870 B.
We have not previously addressed whether to adopt any good-faith exception to the exclusionary rule for evidence obtained in violation of a defendant’s constitutional rights against unreasonable searches and seizures.[4] In other contexts, however, we have addressed the exclusionary rule or refused to exclude evidence that was obtained in violation of statutes. These cases establish that the Davis good-faith exception is consistent with our prior application of the exclusionary rule.
In State v. Nolting, 312 Minn. 449, 456, 254 N.W.2d 340, 344-45 (1977), we concluded that a search warrant for a package was supported by probable cause despite the fact that the affidavit in support of the warrant contained a material misstatement of fact told by a mail clerk to a police officer. We relied on the fact that “the officer procured a warrant from a judicial officer before searching the package” in determining that there was probable case. Id. at 456, 254 N.W.2d at 345. In so doing, we noted that “[t]he securing of a warrant may tip the scales” in a case in which probable cause is questionable. Id. at 456 n. 7, 254 N.W.2d at 345 n. 7. We explained that one reason for this principle
may lie in the characterization of the exclusionary rule as being directed at police misconduct. Little more can be expected of a police officer who gathers evidence, presents it to a magistrate, and receives a warrant. If Fourth Amendment rights are violated by the resulting search, the fault lies in large part with the judiciary since refusal to issue the warrant presumably would compel the officer to gather more evidence before a search was conducted. In the present case such evidence was apparently available. Because judges may disagree about the existence of probable cause, it is difficult to fault an officer in close cases for not realizing that his investigation has not yet yielded probable cause.
Id. at 456 n. 7, 254 N.W.2d at 345 n. 7 (citations omitted).
The following term, we applied a good-faith exception and refused to exclude evidence obtained during a search when the warrant authorizing the search violated a statute regarding nighttime searches. See State v. Lien, 265 N.W.2d 833, 841 (Minn.1978), overruled on other grounds by Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). We declined to suppress the evidence uncovered by the *871 search because “it is clear that the police acted in good faith and that any error committed is attributable to the magistrate.” Id. at 840. Although the case was decided on statutory rather than constitutional grounds, we noted that “[u]nder these circumstances, one may question whether the exclusionary rule should apply even if the violation were deemed of constitutional proportions.” Id.
Next, in State v. Wiberg, 296 N.W.2d 388, 392-93 (Minn.1980), we addressed whether a defendant’s statement made 2 days after her arrest should be suppressed because of a violation of Minn. R.Crim. P. 4.02, subd. 5(1), regarding a prompt arraignment. We refused to apply a federal rule that “automatically exclude[s] statements made which have a reasonable relationship to the unnecessary delay before arraignment.” Wiberg, 296 N.W.2d at 393. We did so because “[ajpplication of the exclusionary rule exacts a great cost on societal interests by the proscription, in many cases, of concededly relevant and reliable evidence.” Id. That cost “must be balanced” against “the deterrence of improper police action that the exclusionary rule promotes.” Id.
Finally, in Johnson v. State, we rejected a defendant’s ineffective-assistance-of-eounsel claim that was based on his trial counsel’s failure to challenge DNA evidence that was obtained pursuant to an erroneous court order. 673 N.W.2d 144, 148-51 (Minn.2004). We concluded that the defendant could not show prejudice because the exclusionary rule would not have applied to this DNA evidence, which was obtained because of a court’s improper interpretation of a statute. Id. at .150. Thus, “the goal of preventing police misconduct would [not] be served by suppression of the evidence.” Id.; see also Brooks, 838 N.W.2d at 574-76 (Stras, J., concurring) (advocating adoption of the Davis good-faith exception in a DWI case because “the deterrence benefits of excluding the test results from the ... evidence in this case are essentially zero”); State v. Jackson, 742 N.W.2d 163, 183-84 (Minn.2007) (Anderson, G. Barry, J., dissenting) (“[Tjhere is rarely a significant deterrent effect when an officer acts in good faith within the scope of a warrant.... ” (citing Leon, 468 U.S. at 920-21, 104 S.Ct. 3405)).
These cases inform our decision today. Like the Supreme Court, we have identified deterrence of police misconduct as the central purpose of the exclusionary rule. See, e.g., State v. Hardy, 577 N.W.2d 212, 217 (Minn.1998) (“[Tjhe primary purpose of the exclusionary rule is to deter police misconduct.”); State v. Doughty, 472 N.W.2d 299, 307 (Minn.1991). We have refused to suppress evidence in circumstances in which the police have acted in good-faith reliance on a judicial determination or when suppression would not deter police misconduct.
We agree with the Supreme Court that applying the exclusionary rule to evidence obtained during a search conducted in reasonable reliance on binding appellate precedent would have no deterrent value on police misconduct. Davis, — U.S. at -, 131 S.Ct. at 2429 (“About all that exclusion would deter in this case is conscientious police work.”). When the law changes after a search such that the search now violates the Fourth Amendment to the U.S. Constitution or Article I, Section 10 of the Minnesota Constitution, any error rests with judges and not the police. “Excluding evidence in such cases deters no police misconduct and imposes substantial social costs.” Davis, — U.S. at -, 131 S.Ct. at 2434.
III.
We next turn to the arguments Lind-quist makes for not adopting the Davis *872 good-faith exception to the exclusionary rule for evidence obtained from an unreasonable search or seizure.
A.
Lindquist first notes that this court has occasionally provided greater protection against unreasonable searches and seizures under Article I, Section 10, of the Minnesota Constitution than is provided by the Fourth Amendment. See, e.g., State v. Carter, 697 N.W.2d 199, 202 (Minn.2005) (dog sniff of storage unit is a search); In re Welfare of B.R.K., 658 N.W.2d 565, 578 (Minn.2003) (short-term social guests have a legitimate expectation of privacy); see also Ascher v. Comm’r of Pub. Safety, 519 N.W.2d 183, 187 (Minn.1994) (sobriety-checkpoint roadblock constitutes an unreasonable seizure absent an “objective individualized articulable suspicion of criminal wrongdoing”); In re Welfare of E.D.J., 502 N.W.2d 779, 783 (Minn.1993) (seizure occurs when a reasonable person would not feel free to leave). In a similar fashion, Lindquist contends we should provide greater protection under the Minnesota Constitution here and not adopt any good-faith exceptions to the exclusionary rule.
These cases, however, dealt with determining whether a constitutional violation occurred. The issue here, by contrast, is the appropriate remedy, which is a “separate, analytically distinct issue” from whether a constitutional violation occurred. See Davis, — U.S. at -, 131 S.Ct. at 2430-31. Thus, our jurisprudence regarding whether to afford greater protection under a provision in the Minnesota Constitution than is provided by its federal counterpart is not applicable.
Moreover, even if this jurisprudence were applicable, we have held that when a federal constitutional provision has the same or substantially similar language as a corresponding provision in the Minnesota Constitution and the United States Supreme Court has interpreted that language, we will not construe the Minnesota Constitution as granting greater protection for individual rights “unless there is a principled basis to do so.” Kahn v. Griffin, 701 N.W.2d 815, 824 (Minn.2005). We see no principled basis to do so when we have made clear that the exclusionary rule in Minnesota, like the federal exclusionary rule, does not require automatic suppression of evidence obtained by unlawful means. See Wiberg, 296 N.W.2d at 393 (rejecting automatic suppression of a defendant’s statement obtained in violation of Minn. R.Crim. P. 4.02); see also Johnson, 673 N.W.2d at 149 (stating that the exclusionary rule “need not be applied rigidly to every situation”). Thus, this is not a situation in which greater protection is warranted under the Minnesota exclusionary rule.
B.
Relying largely on the Davis dissent, Lindquist next argues that the Davis good-faith exception is incompatible with the Supreme Court’s holding in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). See Davis, — U.S. at -, 131 S.Ct. at 2436-37 (Breyer, J., dissenting). In Griffith, the Court held that a new rule of constitutional criminal procedure applies to all cases pending on direct review or not final at the time the rule is announced. 479 U.S. at 328, 107 S.Ct. 708. The Davis dissent asserted that the good-faith exception “creates a categorical bar to obtaining redress in every case pending when a precedent is overturned,” leaving defendants “with a right but not a remedy.” Davis, — U.S. at -, 131 S.Ct. at 2437 (Breyer, J., dissenting) (citation omitted). According to Lind-quist, the Davis good-faith exception disal *873 lows use of the exclusionary- rule in the very cases Griffith was intended to reach, resulting in similarly situated defendants being treated in different ways depending on the date of the unconstitutional search. See Davis, — U.S. at -, 131 S.Ct. at 2437-38 (Breyer, J., dissenting).
As the Supreme Court explained in Davis, however, this argument ignores the fact that the “[rjemedy” for a constitutional violation “is a separate, analytically distinct issue” from whether a constitutional right applies. Davis, — U.S. at -, 131 S.Ct. at 2431. First, a court must determine whether a new rule of constitutional criminal procedure “is available on direct review as a 'potential ground for relief.” Id. at -, 131 S.Ct. at 2430. But it does not necessarily follow that because a defendant is entitled to a constitutional right, that defendant is also entitled to a certain remedy. See id. at -, 131 S.Ct. at 2431.
Our case law supports this proposition. We have stated that if a rule of constitutional criminal procedure “is considered ‘new,’ it must be applied to all cases pending on direct review.” State v. Houston, 702 N.W.2d 268, 270 (Minn.2005); see, e.g., State v. Dettman, 719 N.W.2d 644, 648 (Minn.2006) (stating “the substantive rule of Blakely applies” because the defendant’s direct appeal was pending at the time Blakely was decided). We have never stated, however, that a certain remedy applies as a matter of right when a new rule of constitutional criminal procedure has been announced.
Moreover, the Davis good-faith exception affects only a small subset of the cases reached by Griffith. The Davis exception applies only to new Fourth Amendment rules, leaving Griffith’s application to other constitutional rights unaffected.. Another limiting factor is that the exception applies only when a case overrules binding appellate precedent that previously worked in the State’s favor. See State v. Dearborn, 327 Wis.2d 252, 786 N.W.2d 97, 109-10 (2010) (“The only litigants who will be disincentivized are the relatively small number of defendants who choose to challenge searches that have already clearly and unequivocally been, held lawful.”). Thus, the Davis good-faith exception has limited application.
C.
Lindquist next argues that the exclusionary rule is a protected remedy under Article I, Section 8, of the Minnesota Constitution. . The Remedies Clause provides: “Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.” Minn. Const, art. I, § 8. The right to a remedy for wrongs is “[a] fundamental concept of our legal system and a right guaranteed by our state constitution.” Anderson v. Stream, 295 N.W.2d 595, 600 (Minn.1980).
The Remedies Clause “relates primarily to the assertion of affirmative rights.” Peters v. City of Duluth, 119 Minn. 96, 105, 137 N.W. 390, 394 (1912). Although some of our early cases suggest an expansive reading of the Remedies Clause, see, e.g., Davis v. Pierse, 7 Minn. 13, 18 (Gil. 1, 6) (1862), we have subsequently held that the Remedies Clause “does not guarantee redress for every wrong, but instead enjoins the [government] from eliminating those remedies that have vested at common law.” Olson v. Ford Motor Co., 558 N.W.2d 491, 497 (Minn.1997) (citing Hickman v. Grp. Health Plan, Inc., 396 N.W.2d 10, 14 *874 (Minn.1986)).[5] We normally interpret the Remedies Clause as preventing the Legislature from abrogating recognized common-law causes of action. See, e.g., id.; Carlson v. Smogard, 298 Minn. 362, 369, 216 N.W.2d 615, 620 (1974).
The exclusionary rule has no basis in the U.S. and Minnesota Constitutions.[6] See Davis, — U.S. at -, 131 S.Ct. at 2426 (referring to the exclusionary rule as a “prudential doctrine created ... to compel respect for the constitutional guaranty” (citations omitted)); United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (stating the exclusionary rule is “a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved”). Moreover, the exclusionary rule was wholly unknown as a remedy for unreasonable searches and seizures when our state constitution came into force in 1858, and was not adopted in Minnesota for over a century until the Supreme Court mandated its application to the states. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applying the exclusionary rule to the states); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (mandating the exclusionary rule in federal court). The exclusionary rule functions as a judicially created rule of evidence and does not present an affirmative or common-law right. We have never held that such a remedy is required by Article I, Section 8, of the Minnesota Constitution.
Although we have stated that “the Remedies Clause does not guarantee redress for every wrong,” Olson, 558 N.W.2d at 497, in his dissent Justice Page nevertheless contends that every constitutional violation requires a remedy. Our case law demonstrates that this is not the case, particularly in the criminal context. Prior to the Supreme Court’s decision in Mapp, we had long held that evidence obtained pursuant to an illegal search was admissible in a subsequent criminal prosecution. See State v. Hesse, 154 Minn. 89, 91, 191 N.W. 267, 268 (1922) (holding evidence was admissible even if the warrant was defective); State v. Rogne, 115 Minn. 204, 206, 132 N.W. 5, 5 (1911) (holding that evidence obtained without a search warrant was admissible); State v. Hoyle, 98 Minn. 254, 255-56, 107 N.W. 1130, 1130 (1906) (same).
*875 We never suggested that the Remedies Clause applied to these constitutional violations and required the evidence to be excluded, and the adoption of the exclusionary rule does not change that fact. Moreover, in criminal cases we regularly decline to remedy a constitutional error that is harmless beyond a reasonable doubt. See, e.g., State v. Shoen, 598 N.W.2d 370, 373, 379 (Minn.1999) (concluding that an improper restraint violated the defendant’s right to a fair trial but was harmless beyond a reasonable doubt); State v. Juarez, 572 N.W.2d 286, 291, 293 (Minn.1997) (concluding that admission of a statement obtained in violation of the Fifth Amendment was harmless beyond a reasonable doubt). The Remedies Clause does not have the reach that Justice Page suggests.[7]
D.
In his dissent, Justice Lillehaug argues that Minn.Stat. § 626.21 (2014), which he asserts is Minnesota’s codification of the federal exclusionary rule, precludes this court from applying a good-faith exception. Section 626.21 provides:
A person aggrieved by an unlawful search and seizure may move the district court ... to suppress the use, as evidence, of anything so obtained on the ground that (1) the property was illegally seized, or (2) the property was illegally seized without warrant.... If the motion is granted the property ... shall not be admissible in evidence at any hearing or trial.
Applying the Davis good-faith exception does not violate this statutory provision.
First, the statute provides that illegally seized property is inadmissible as evidence “[i]f the motion [to suppress] is granted.” Id. (emphasis added). The statute, however, contains no substantive guidelines for ruling on the motion to suppress. See id. Thus, based on the plain language of the statute, even if the defendant claims the property was illegally seized, the statute does not prevent the district court from denying a motion to suppress because, for example, the officer relied in good faith on binding appellate precedent. See State v. Brooks, 838 N.W.2d 563, 575 n. 3 (Minn.2013) (Stras, J., concurring). Second, MinmStat. § 626.21 relates only to seized “property,” or items “obtained” pursuant to an unlawful search and seizure. Here, Lindquist’s blood constitutes the property seized or item obtained by the unlawful search and seizure. It is undisputed that Lindquist is not seeking the return or suppression of this property, but rather to suppress the result of tests conducted on that property. See Brooks, 838 N.W.2d at 575 n. 3 (Stras, J., concurring).[8]
*876 By contrast, other state courts that have rejected a good-faith exception based on a statutory exclusionary rule have done so when the statute contains mandatory requirements for the exclusion of evidence. For example, the North Carolina Supreme Court declined to adopt the Leon exception, in part, because N.C. GemStat. § 15A-974 (1983) provided that “evidence must be suppressed if ... [i]ts exclusion is required by” the federal or state constitution. State v. Carter, 322 N.C. 709, 370 S.E.2d 553, 559 (1988) (emphasis added).[9] And in State v. Garcia, the Florida Supreme Court declined to apply the Leon exception because the applicable statute required suppression of wiretap evidence obtained by means of a deficient search warrant. 547 So.2d 628, 630 (Fla.1989) (holding that Fla. Stat. § 934.06 (1985), which provided that “no evidence derived” from a wiretap “may be received in evidence in any trial ... if the disclosure of that information would be in violation of this chapter,” created a statutory exclusionary rule). But see Gary v. State, 262 Ga. 573, 422 S.E.2d 426, 428 (1992) (declining to adopt the Leon exception based on a statute similar in wording to Minn.Stat. § 626.21).
Second, our case law does not support Justice Lillehaug’s view of section 626.21. We have noted that the exclusionary rule “need not be applied rigidly to every situation in which evidence is seized illegally.” Johnson v. State, 673 N.W.2d 144, 149 (Minn.2004) (citing State v. Wiberg, 296 N.W.2d 388, 393 (Minn.1980)). We have also interpreted Minn.Stat. § 626.21 to allow the admission of evidence that was unlawfully obtained. State v. Smith, 367 N.W.2d 497, 504-05 (Minn.1985) (declining to apply section 626.21 to evidence obtained pursuant to a search of the defendant’s residence, despite the fact that the disclosure of the defendant’s address to police may have been prohibited by statute, because the violation “did not subvert the basic purpose of the statute”). For these reasons, we conclude that Minn.Stat. § 626.21 does not preclude the adoption of the Davis good-faith exception to the exclusionary rule.
IV.
In summary, we hold that the exclusionary rule does not apply to violations of the Fourth Amendment to the U.S. Constitution, or Article I, Section 10, of the Minnesota Constitution when law enforcement acts in objectively reasonable reliance on binding appellate precedent. We note the narrowness of our holding, however.' The Davis good-faith exception represents a small fragment of federal good-faith jurisprudence. The State has not asked us here to consider any other good-faith exception to the exclusionary rule, and nothing in our opinion should be construed as authorizing the application of exceptions we have not explicitly adopted. Further, the good-faith exception adopted here applies only when law enforcement officers act pursuant to binding appellate precedent, not persuasive precedent from other jurisdictions. In addition, the binding precedent must specifically authorize the behavior. Law enforcement cannot “extend the law” to areas in which no prece *877 dent exists or the law is unsettled. See Davis, — U.S. at -, 131 S.Ct. at 2435 (Sotomayor, J., concurring).
In his dissent, Justice Page asserts that our decision “can only be read as opening the door to adoption of the whole panoply of [good-faith] exceptions.” We disagree. Justice Page correctly notes that “[t]he deterrence rationale underlies not only Davis, but the entire line of good-faith exception cases.” Today’s holding, however, merely reflects our opinion that the exclusionary rule does not deter police misconduct when applied to evidence obtained during a search conducted in reasonable reliance on binding precedent.[10]
We do not decide here whether applying the exclusionary rule to evidence obtained in other ways, such as pursuant to a facially valid search warrant later held to be deficient, would provide an appreciable deterrent effect. See generally David Clark Esseks, Note, Errors in Good Faith: The Leon Exception Six Years Later, 89 Mich. L. Rev. 625, 633-51 (1990) (examining cases in which evidence was admitted pursuant to Leon even though the exclusionary rule may have deterred future police misconduct). Nor do we decide here whether the exclusionary rule should apply to evidence obtained due to police negligence. See Herring v. United States, 555 U.S. 135, 143-47, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); see also Jennifer E. Laurin, Essay, Trawling for Herring: Lessons in Doctrinal Borrowing and Convergence, 111 Colum. L. Rev. 670, 679-83 (2011) (asserting that the Court’s reliance on police culpability constitutes a “significant change” to its exclusionary-rule jurisprudence).
An officer who relies on binding appellate precedent has engaged in conduct that is decidedly nonculpable. See Davis, — U.S. at -, 131 S.Ct. at 2435-36 (Sotomayor, J., concurring). Because culpability is not at issue here, we see no reason to address whether the exclusionary rule should apply to police “conduct [that] involves only simple, ‘isolated’ negligence.” Id. at -, 131 S.Ct. at 2427-28 (majority opinion) (quoting Herring, 555 U.S. at 137, 129 S.Ct. 695).[11] For these reasons, we disagree with Justice Page’s view that the Davis good-faith exception is “inseparable from ... Leon and its progeny.”
V.
Finally, we turn to applying the Davis good-faith exception to the facts of this case. In State v. Shriner, we held that “[t]he rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the *878 police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that defendant committed criminal vehicular operation.” 751 N.W.2d 538, 545 (Minn.2008), abrogated by Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). We later extended the single-factor-exigency analysis from Shriner to any DWI offense. State v. Netland, 762 N.W.2d 202, 213 (Minn.2009), abrogated in part by McNeely, — U.S. -, 133 S.Ct. 1552. Lindquist was ' charged with criminal vehicular operation and driving while impaired, and she does not assert that the officers lacked probable cause to believe she committed those offenses. Under Shriner and Netland, which were binding at the time of Lind-quist’s arrest, these circumstances created a single-factor exigency that justified a warrantless blood draw.
Lindquist, nevertheless argues that the record is inadequate to determine whether the Davis good-faith exception applies here because the State did not argue for adoption of Davis until after Lindquist had been convicted; therefore, “facts which would be relevant to a determination of good faith were not developed” at trial. She states that the officer’s brief testimony that “it’s procedure to take a blood sample” of a person who causes a car accident involving injury is insufficient to demonstrate that he relied on binding appellate precedent.
This argument is premised on a misreading of Davis, which specifically states that the test for police reliance on appellate precedent is objective. — U.S. at -, 131 S.Ct. at 2423-24. The Court describes “objectively reasonable reliance” by citing to Leon, which makes clear that the “good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal.” United States v. Leon, 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), cited in Davis, — U.S. at -, 131 S.Ct. at 2428. Further, the Court uses the word “compliance” interchangeably with “reliance,” e.g., Davis, — U.S. at -, 131 S.Ct. at 2428 (“The police acted in strict compliance with binding precedent....”), suggesting that we must determine only whether an officer “complied” with precedent. The officer’s subjective belief that he relied on binding precedent is irrelevant. Cf. Heien v. North Carolina, — U.S. -, 135 S.Ct. 530, 539, 190 L.Ed.2d 475 (2014) (noting that a court “do[esj not examine the subjective understanding of the particular officer involved” when determining whether an officer made a reasonable mistake of law). Rather, we must determine whether a reasonable officer would have understood the binding appellate precedent as authorizing the conduct undertaken.
Here, the officer who facilitated Lind-quist’s blood draw acted in good-faith reliance on Shriner and Netland.[12] He testified that he received a call from dispatch reporting a “personal injury crash,” and he later learned that the passenger had suffered a head injury. When he arrived at the Lindquists’ residence, he learned that Lindquist and her husband had been in the car at the time of the accident and that Lindquist had been driving. He observed that Lindquist’s husband had blood on his hand and face. The officer testified that *879 Lindquist had an “unsteady gait” and her eyes were “bloodshot and watery.” He observed her fail field sobriety tests. Based on this evidence, a reasonable officer would have understood Skriner and Netland as allowing a warrantless blood draw because there was probable cause to believe Lindquist was intoxicated when she caused a motor vehicle accident that resulted in injury. The officer’s “compliance” with Skriner and Netland was reasonable and did not extend those cases beyond their holdings. As a result, we hold that the district court did not err in admitting the results of Lindquist’s blood draw because the officer who facilitated the blood draw acted in objectively reasonably reliance on binding appellate precedent.
Affirmed.

. The offense of criminal vehicle operation causing bodily harm has been subsequently renumbered section 609.2113. Act of Apr. 30, 2014, ch. 180, § 9, 2014 Minn. Laws 281, 288 (codified at Minn.Stat. § 609.2113 (2014)).

. In his dissent, Justice Page suggests that we attempt to sidestep McNeely by adopting Davis. We simply note that both opinions were issued by the United States Supreme Court and neither has been overruled.

. The Supreme Court has held that exclusion is inappropriate in a variety of circumstances, notwithstanding a Fourth Amendment violation. See, e.g., Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (habeas proceedings); United States v. Janis, 428 U.S. 433, 459-60, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (ordinary civil suits and civil tax proceedings); Calandra, 414 U.S. at 354, 94 S.Ct. 613 (grand-jury proceedings); Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed, 503 (1954) (evidence used to impeach a criminal defendant's direct testimony).

. The State has urged us to adopt the Leon good-faith exception in search and seizure cases on several occasions, but we have declined to reach the issue. In several cases, we determined that no Fourth Amendment violation had occurred and therefore the exception was inapplicable. See State v. Wasson, 615 N.W.2d 316, 321 (Minn.2000); State v. Harris, 589 N.W.2d 782, 791 n. 1 (Minn.1999); State v. Lindsey, 473 N.W.2d 857, 864 n. 4 (Minn.1991); State v. McCloskey, 453 N.W.2d 700, 701 n. 1 (Minn.1990); State v. Wiley, 366 N.W.2d 265, 269 n. 2 (Minn.1985); see also State v. Bourke, 718 N.W.2d 922, 929 n. 7 (Minn.2006) (resolving the issue on statutory grounds and declining to consider the good-faith exception articulated in Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006)). We also declined to address the Leon good-faith exception in two cases because, regardless of the officers’ good faith, the warrant application clearly lacked probable cause and therefore violated Article I, Section 10, of the Minnesota Constitution. See Garza v. State, 632 N.W.2d 633, 639-40 (Minn.2001); State v. Zanter, 535 N.W.2d 624, 634 (Minn.1995); see also Leon, 468 U.S. at 921, 104 S.Ct. 3405 (explaining that evidence obtained in reliance on a search warrant must still be suppressed under the exclusionary rule if the affidavit in support of the warrant was “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable” or if the warrant was "facially deficient” (citation omitted)).

. In his dissent, Justice Page asserts that our single reference to Olson and Hickman "grossly overstates the[ir] impact.” These cases merely support our conclusion that the Remedies Clause is more limited than Justice Page contends. Indeed, Justice Page may "overstate[] the impact” of Davis v. Pierse, 7 Minn. 13 (Gil. 1) (1862), and Agin v. Heyward, 6 Minn. 110 (Gil. 53) (1861), by suggesting that those cases mandate application of the exclusionary rule, which did not exist until 52 years after Davis and Agin were decided. See Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914).
Justice Page also notes that neither Olson nor Hickman "addressed the Section 10 right to be free from unreasonable searches and seizures of person or property.” We simply respond that the same can be said of Davis, Agin, and every other case interpreting the Remedies Clause upon which Justice Page relies.

. Elevating the exclusionary rule to a constitutional right, as appellant would have us do here, has its own consequences. It may, for example, impede the development of better and more effective remedies for police misconduct than the exclusionary rule. See generally Alicia M. Hilton, Alternatives to the Exclusionary Rule After Hudson v. Michigan: Preventing and Remedying Police Misconduct, 53 Vill. L. Rev. 47 (2008) (proposing alternatives to the exclusionary rule for remedying violations of the knock-and-announce rule); Tonja Jacobi, The Law and Economics of the Exclusionary Rule, 87 Notre Dame L. Rev. 585 (2011) (reassessing the costs and benefits of the exclusionary rule).

. Justice Page argues that Hesse, Rogne, and Hoyle are unpersuasive because the Remedies Clause was not specifically raised by the parties. Regardless of the specific arguments advanced, these cases highlight the novelty of Justice Page’s position — that the Remedies Clause guarantees exclusion of illegally seized evidence — when we have not recognized such a right in over 150 years of interpreting the Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution.
Similarly, we rely on the harmless-error cases to demonstrate that not every constitutional violation requires a remedy. Justice Page suggests that these cases are inapposite because correction of the constitutional error would not make a difference to the outcome of the case. But this reasoning misidentifies the remedy, as we have consistently stated that the proper remedy is not simply correction of the error, but rather reversal of the conviction and a new trial. See, e.g., Shoen, 598 N.W.2d at 377; Juarez, 572 N.W.2d at 291.

. Contrary to Justice Lillehaug’s dissent, we do not assume that the reach of Minn.Stat. § 626.21 is coextensive with that of the *876 Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution. The Legislature, if it had so desired, could have drafted the statute to require suppression of the "fruits” of an unlawful search or seizure.

. In 2011, the North Carolina General Assembly amended N.C. Gen.Stat. § 15A-974 to include a general good-faith exception and "request[ed] that the North Carolina Supreme Court reconsider, and overrule, its holding in State v. Carter.” Act of Mar. 18, 2011, ch. 6, §§ 1-2, 2011 N.C. Sess. Laws 10, 11.

. Indeed, neither the parties nor the dissents argue that applying the exclusionary rule here would result in appreciable deterrence of police misconduct, and Justice Breyer's dissent in Davis also fails to make this point. See Davis, — U.S. at -, 131 S.Ct. at 2436-40 (Breyer, J., dissenting). By contrast, in Supreme Court cases adopting other exceptions to the exclusionary rule, there was considerable debate as to whether applying the exclusionary rule to the particular circumstances of the case would deter police misconduct. See Herring v. United States, 555 U.S. 135, 154, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (Ginsburg, J., dissenting) (arguing that the exclusionary rule incentivizes the police department to "take further precautions to ensure the integrity of its'database”.); Arizona v. Evans, 514 U.S. 1, 21, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (Stevens, J., dissenting) ("The deterrent purpose extends to law enforcement as a whole, not merely to 'the arresting officer.’ ”); Leon, 468 U.S. at 953-54, 104 S.Ct. 3405 (Brennan, J., dissenting) (arguing that the Court ignored the deterrent value of requiring a valid warrant).

. To the extent that Davis relies on the "culpability” analysis espoused in Herring, we endorse Justice Page’s assertion that we need not rely on reasoning that is "broader than necessary to render our decision."

. The parties dispute whether, based on the totality of the circumstances, exigent circumstances were present such that Lindquist’s warrantless blood draw did not violate Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). Because we conclude that the exclusionary rule does not apply to Lindquist’s blood draw, we need not decide this issue.