PAGE, Justice
(dissenting).
I respectfully dissent. In this case, the court continues its efforts, begun in State v. Bernard, 859 N.W.2d 762 (Minn.2015), and reiterated in State v. Lindquist, 869 N.W.2d 868, 2015 WL 4928147 (Minn. Aug. 19, 2015), to protect its erroneous decision in State v. Shriner, 751 N.W.2d 538 (Minn.2008) (establishing that the evanescent nature of alcohol in the bloodstream is a single-factor exigency), abrogated by Missouri v. McNeely, — U.S. —, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (holding that, contrary to this court’s decisions in Shriner, the dissipation of alcohol in the blood does not create a per se exigency), and Shriner’s progeny. In Bernard, we “fundamentally departed] from longstanding Fourth Amendment principles” to justify a warrantless breath test as a valid search incident to arrest — “creating a novel bright-line rule” that “simply readopts a per se exigency under a different name.” 859 N.W.2d at 774, 779 (Minn.2015) (Page, J., & Stras, J., dissenting jointly). Here, the court doubles down and again “readopts a per se exigency,” id. at 779, this time by refusing to hold the State to its “heavy burden” to rebut the presumption of unreasonableness associated with a war-rantless search of the person, Welsh v. Wisconsin, 466 U.S. 740, 749-50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), by establishing that “the delay necessary to obtain a warrant, under the circumstances, threatened ‘the destruction of evidence,’ ” Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (citation omitted). The record upon which the court finds the existence of exigent circumstances is so minimal that the decision here, in effect, nullifies the warrant requirement in every suspected drunk-driving case involving an accident with serious injuries — contradicting basic Fourth Amendment principles and the Supreme Court’s decision in McNeely.
I.
The Fourth Amendment provides, in relevant part, that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.” A blood draw is a search of the person that is subject to Fourth Amendment protections. Missouri v. McNeely, — U.S. —, —, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013).
A warrantless search of a person is reasonable only if it falls within a recognized exception to the warrant requirement. McNeely, — U.S. at —, 133 S.Ct. at 1558. One well-recognized exception to the warrant requirement applies when “the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.” Kentucky v. King, 563 U.S. 452, *682 -, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) (alteration in original) (citation omitted). To determine whether exigent circumstances justified a warrantless search, a court must engage in a totality-of-the-eircumstances analysis. McNeely, — U.S. at —, 133 S.Ct. at 1554. This analysis requires an objective evaluation of the facts reasonably available to the officer at the time of the search. See Brigham City v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). The State bears a “heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.” Welsh v. Wisconsin, 466 U.S. 740, 749-50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); see also id. at 750, 104 S.Ct. 2091 (explaining that “the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches” to a warrantless search).
The United States Supreme Court has considered whether exigent circumstances existed to justify a warrantless blood draw of a suspected drunk driver in two relevant cases. McNeely, — U.S. —, 133 S.Ct. 1552; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In Schmerber, the Court considered whether the warrantless taking of blood from a person injured in a car crash and arrested for driving under the influence of alcohol violated the Fourth Amendment. 384 U.S. at 766-68, 86 S.Ct. 1826. The Court concluded that the warrantless blood draw was not unconstitutional because the officer who ordered the blood draw “might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, ‘threatened the destruction of evidence.’ ” Id. at 770, 86 S.Ct. 1826 (citation omitted). More specifically, the Court explained that
the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant.
Id. at 770-71, 86 S.Ct. 1826. “Given these special facts,” the warrantless blood draw did not violate the Fourth Amendment. Id. at 771, 86 S.Ct. 1826. The Court noted that it “reach[ed] this judgment only on the facts of the present record.” Id. at 772, 86 S.Ct. 1826 (emphasis added).
In McNeely, the Court considered “whether the natural metabolization of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment’s warrant requirement for nonconsensual blood testing in all drunk-driving cases.” — U.S. at —, 133 S.Ct. at 1556. The Court held that, “while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in Schmerber, it does not do so categorically.” Id. at -, 133 S.Ct. at 1563. Instead, “[wjhether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on a totality of the circumstances.” Id. The Court rejected the assumption that there is never time to secure a warrant in drunk-driving cases, reasoning that the collection of BAC evidence does not present a “now or never” situation because BAC evidence “dissipates over time in a gradual and relatively predictable manner.” Id. at -, 133 S.Ct. at 1561. The Court also reasoned that technological advances and changes in court rules since Schmerber was decided permit “the more expeditious processing of warrant applications.” Id. at -, 133 S.Ct. at 1561-62. Accordingly, the Court declined to “depart from careful case-by- *683 case assessment of exigency,” id. at-, 133 S.Ct. at 1561, and instead required that courts determine in each case, based on the totality of the circumstances, whether a warrantless blood test of a drunk-driving suspect is reasonable, id. at -, 133 S.Ct. at 1563. If under the totality of the circumstances law enforcement “can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.” Id. at-, 133 S.Ct. at 1561. Here, the State has failed to establish, under the standard set out in McNeely, that the Fourth Amendment does not mandate a warrant in this case.
II.
In light of McNeely and Schmerber, I agree with the court that the relevant inquiry is whether, under all of the facts reasonably available to the officer at the time of the search, it was objectively reasonable for the officer to conclude that he or she was faced with an emergency in which the delay necessary to obtain a warrant, under the circumstances, would “significantly undermin[e] the efficacy of the search.”[1] McNeely, — U.S. at —, 133 S.Ct. at 1561. But I do not agree that the record in this case meets that standard, particularly in light of the State’s burden to establish exigency, see Welsh, 466 U.S. at 749-50, 104 S.Ct. 2091; see also State v. Ture, 632 N.W.2d 621, 627 (Minn.2001) (“The state bears the burden of establishing an exception to the warrant requirement.”), and the deference that must be given to the district court’s findings. Although we review the ultimate determination of exigency de novo, we review the district court’s factual findings for clear error. See State v. Zornes, 831 N.W.2d 609, 621 (Minn.2013) (“The [district] court’s factual findings [relating to a Fourth Amendment search and seizure] are reviewed for clear error, but the de novo standard applies to the application of the facts to the Fourth Amendment....” (citations omitted)).
The district court found that “[t]he blood draw occurred at 11:18 p.m., 50 minutes after the crash was reported,” and that “there was thus still 70 minutes remaining to obtain a sample from defendant.” The district court also found that “Trooper Martens could have begun the telephonic warrant process even earlier, while driving from the crash site to the [hospital]” because Martens had his personal cell phone with him. These findings are supported by the record, and thus are not clearly erroneous.
In light of these findings regarding the time available to Sergeant Martens, it is clear that the State did not meet its burden to prove exigent circumstances. No finding by the district court or evidence in the record suggests that Sergeant Martens could not have obtained a warrant within the time remaining in the 2-hour window.[2] *684 While the State generally contends that the telephonic warrant process outlined in Minn. R.Crim. P. 36.01-08 is burdensome and that there is no guarantee that the on-call judge would have answered a call at that time of night, the State presented no evidence establishing approximately how long it would have taken to obtain a warrant or that a judge was actually unavailable.[3] Without any evidence establishing such facts, the State cannot meet its burden to show that the delay necessary to obtain a warrant, under the circumstances, “significantly undermin[ed] the efficacy of the search.” McNeely, — U.S. at —, 133 S.Ct. at 1561. To conclude otherwise is to, in effect, create another per se exigency in contravention of McNeely. Id. at —,—, 133 S.Ct. at 1561, 1563. If the record actually established the burdensome nature of the telephonic warrant process, that would be one thing, but all we have here is the State’s assertion, nothing more. If the record established that a judge was actually unavailable, that would be one thing, but all we have here are the State’s speculations.
The court, however, asserts that the State met its burden to prove exigent circumstances because Stavish’s medical condition was serious, possibly requiring air transport to another medical center, and because his diagnosis and treatment were evolving. The court also relies on the fact that Martens could not verify Stavish’s medical condition or need for transport with hospital personnel given limitations imposed by federal and state privacy laws. But what the court ignores is the complete lack of evidence presented by the State regarding the length of time necessary to obtain a warrant. Notwithstanding the uncertainty surrounding Stavish’s medical condition and the possibility of air transport, the State failed to establish that Martens could not have obtained a warrant in a sufficiently short period of time — particularly since the district court found that Martens could have taken steps to initiate the telephonic warrant process before arriving at the hospital.
The court draws an analogy to Schmerber, 384 U.S. 757, 86 S.Ct. 1826, but disregards the key differences between that case and this one. In Schmerber, the Court highlighted two “special facts” that, in combination with the natural dissipation of alcohol from the bloodstream, would have led an officer to reasonably believe there was no time to seek out a magistrate and secure a warrant: “time had to be taken to bring the accused to a hospital and to investigate the scene of the accident.” 384 U.S. at 770-71, 86 S.Ct. 1826. Those same “special facts” are not present here. Sergeant Martens’ testimony established that the hospital was only 10 minutes away and that other officers assumed the responsibility of investigating the scene. Moreover, as noted in McNeely, technological advances and changes in court rules in the 47 years since Schmer-ber was decided now permit remote warrant applications and more expeditious warrant processing. 133 S.Ct. at 1561-62; see also Minn. R.Crim. P. 36.01-36.08 (outlining the requirements for telephonic warrant applications).
*685 In this context, the mere fact that this case, like Schmerber, involved an accident and a seriously injured drunk-driving suspect does not warrant the same result. McNeely recognized the need for a case-by-case assessment of exigency — rejecting the argument that there is never time to obtain a warrant in drunk-driving cases. — U.S. at —, —, 133 S.Ct. at 1561, 1563. Instead, “[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.” Id. at-, 133 S.Ct. at 1561 (citation omitted). That is the case here. The record fails to establish that a telephonic warrant could not, under the totality of the circumstances — including the proximity of the hospital to the accident scene, the availability of other officers to investigate the scene, and the ability to apply for a warrant by telephone — have been reasonably obtained before the blood draw without “significantly undermining” the validity or admissibility of the corresponding BAC evidence. Id. at-, 133 S.Ct. at 1561. Therefore, I conclude that the State failed to establish that the delay necessary to obtain a warrant, under the circumstances, “significantly undermin[ed] the efficacy of the search,” id., and accordingly, failed to meet its burden to establish exigent circumstances that justified the warrantless and nonconsensual blood draw from Stavish.
To conclude otherwise is to, in effect, create a new per se rule that permits a warrantless, nonconsensual blood draw any time a drunk-driving suspect is seriously injured and taken to the hospital. It is difficult to understand how, if this record is sufficient to justify a warrantless blood draw, any record will not be sufficient, at least in the context of an accident. The only way I can understand this decision is the court, once again, pretending that McNeely never happened. See State v. Bernard, 859 N.W.2d 762, 774 (Minn.2015) (Page, J., & Stras, J., dissenting jointly); State v. Lindquist, 869 N.W.2d 863, 867-68, 2015 WL 4928147 (Minn. Aug. 19, 2015) (Page, J., dissenting). In the process, the court not only ignores McNeely’s requirement of a case-by-case assessment of exigency, but also the basic principle that a warrantless search of a person is presumptively unreasonable, imposing a “heavy burden” on the State “to demonstrate an urgent need” that justifies such a search. Welsh, 466 U.S. at 749-50, 104 S.Ct. 2091.
III.
The only remaining question is whether the BAC evidence should nevertheless be admissible under the good-faith exception to the exclusionary rale because the blood draw, at the time it was taken, was deemed constitutional by our pre-McNeely precedent, State v. Netland, 762 N.W.2d 202 (Minn.2009), and State v. Shriner, 751 N.W.2d 538 (Minn.2008). In United States v. Davis, — U.S. —, —, 131 S.Ct. 2419, 2434, 180 L.Ed.2d 285 (2011), the United States Supreme Court held that “[ejvidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.” We adopted the Davis good-faith exception in State v. Lindquist, 869 N.W.2d 863, 866, 2015 WL 4928147 (Minn. Aug. 19, 2015). I dissented in Lindquist on the basis that the good-faith exception violates Minn. Const, art. I, § 8,[4] see 869
*686 N.W.2d at 868 (Page, J., dissenting), and I renew those sentiments here. The adoption of the good-faith exception mocks the constitutionally mandated guarantee of a “certain remedy in the laws” by leaving those whose rights have been violated by an illegal search without such a remedy. It also mocks the legislatively created remedy for illegal searches and seizures in Minn.Stat. § 626.21 (2014). See Lind-quist, 869 N.W.2d at 890 (Lillehaug, J., dissenting).
For these reasons, I respectfully dissent.

. While I disagree with the court's conclusion regarding the existence of exigent circumstances, I do agree with the court’s discussion in Part II.C regarding the court of appeals’ misplaced reliance on the seriousness of the offense being investigated and the fact that the accident scene and hospital were located in different counties.

. Stavish was charged with driving while impaired under Minn.Stat. § 169A.20, subd. 1(5) (2014), which defines impairment as an alcohol concentration of 0.08 or greater measured within 2 hours of the time of driving. I do not disagree with the court’s statement that this 2-hour window is relevant to the exigency analysis because collecting a blood sample within that window best ensures that the sample can be used to prove impairment. Cf. McNeely, - U.S. at -, 133 S.Ct. at 1563 (“While experts can work backwards from the [blood alcohol concentration] at the time the *684 sample was taken to determine [blood alcohol concentration] at the time of the alleged offense, longer intervals may raise questions about the accuracy of the calculation.”).

. I note that the district court judge, who found that the State did not establish the existence of exigent circumstances, is in a better position than this court to understand how long it can take to obtain a telephonic warrant and to determine whether the State's arguments were credible.

. Article I, section 8, of the Minnesota Constitution provides:
Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or *686 character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.