

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MISSOURI FOUNDATION, et al., | ) ) ) | |
| Respondents, | ) ) | |
| | ) | WD79619 |
| v. | ) ) | |
| | ) | OPINION FILED: |
| | ) | November 22, 2016 |
| MISSOURI DEPARTMENT OF CORRECTIONS, | ) ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division IV:** Mark D. Pfeiffer, Chief Judge, and
Karen King Mitchell and Gary D. Witt, Judges

The Missouri Department of Corrections ("Department") appeals the judgment of the

Circuit Court of Cole County, Missouri ("trial court"), in favor of the American Civil Liberties

Union of Missouri ("ACLU") which imposed a $500 penalty against the Department and awarded

attorney's fees and costs of $5,145 to the ACLU, pursuant to section 610.027[1] and, specifically,

due to the trial court's conclusion that the Department knowingly violated the Missouri Sunshine

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

Law. On appeal, the Department argues that: (1) the trial court erroneously applied a strict liability standard in the imposition of fines, attorney's fees, and costs; and (2) there is no substantial evidence to support the trial court's judgment. We affirm.

## Factual and Procedural Background

On May 2, 2014, relevant to this appeal, the ACLU requested public records from the Department related to individuals not employed by the Department who had applied to witness executions for a twelve-month period. The representative of the Department designated to respond to all records requests related to executions was the Department's deputy general counsel, Mr. Matt Briesacher ("Briesacher"). Briesacher testified at trial that he had been working on Sunshine Law requests in his role with the Department for five years, and responding to such requests was "a substantial part of [his] duties" during the past two years.

Briesacher responded to the ACLU's request on May 6, 2014, stating that responsive records would be provided within three weeks. In July 2014, the Department produced heavily redacted records in response to the ACLU's request. The redacted information included witness applicants' responses to questions regarding contact information, place of employment, social security numbers, and criminal history. After the ACLU requested that the Department explain its authority for redacting the witness applications, Briesacher cited to section 610.035[2] as authority for redacting social security numbers from the witness applications and section 610.021(14)[3] as his authority for redacting all other personal information of the applicants, specifically noting a concern for "the applicants' right to privacy."

---

[2] The parties do not dispute that section 610.035 specifically authorizes the redaction of social security numbers in a Sunshine Law request such as the one in question.

[3] Section 610.021(14) authorizes a public governmental body to exclude from records production "[r]ecords which are protected from disclosure by law."

On September 2, 2014, the ACLU filed suit against the Department, seeking to compel the Department to disclose the records without redactions (except for social security numbers), and also alleging that the Department's failure to do so from the outset was a "knowing or purposeful violation of the Sunshine Law." A trial was scheduled for July 24, 2015.

Two days before the trial, over a year after the initial requests and months after many execution witness applicants had consented to producing the information requested by the ACLU, the Department produced additional records, some of which were still heavily redacted and some of which were newly un-redacted.

The trial court entered judgment in favor of the ACLU. In its judgment, the trial court explained that "[t]he case law is clear that reliance on [section 610.021(14)] requires a statute which protects the information, not some 'penumbral' right [to privacy]." The trial court also noted that the Department's "right to privacy" redaction explanation appeared to the trial court to be nothing more than "an afterthought," and consequently, the trial court placed no credibility in the Department's attempt to belatedly and purportedly rely upon this basis for redacting information—information that the trial court noted was "[t]he type of information . . . released by the Department of Revenue Driver's License Bureau on a daily basis and is available online from Casenet to the general public." The trial court also found it coincidental that the Department was producing a large quantity of previously redacted records forty-eight hours prior to trial; ultimately concluding: "The [trial court] finds, by a preponderance of the evidence, that the failure of [the Department] to produce the records . . . to be a knowing violation of the Sunshine Law." Accordingly, as part of its judgment, the trial court imposed a fine of $500 plus attorney's fees and costs in the amount of $5,145.

This appeal follows. In its appeal, the Department does not appeal the trial court's finding that it violated the Sunshine Law; instead, the Department appeals the trial court's conclusion that the violation was a "knowing" violation of the Sunshine law.

**Standard of Review**

What constitutes a knowing or purposeful violation of the Sunshine Law is a question of law. Section 610.027 expressly states that a knowing violation occurs when the public entity "has knowingly violated sections 610.010 to 610.026." § 610.027.3. To prove a "knowing" violation, a party, therefore, must do more than show that the [public entity] knew that it was not producing the report; as this Court noted in *Strake v. Robinwood West Cmty. Improvement Dist.*, 473 S.W.3d 642, 645 (Mo. banc 2015), section 610.027.2 requires proof that the public entity knew that its failure to produce the report violated the Sunshine Law. § 610.027.3. The standard required to prove a "purposeful" violation under section 610.027 is greater—the party must show that the defendant "purposefully violated section 610.010 to 610.026", which this Court has defined as acting with "a 'conscious design, intent, or plan' to violate the law and d[id] so 'with awareness of the probable consequences.'" *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998).

. . . .

Whether the conduct of the [public entity] brings it within the scope of the statutory definitions of knowing or purposeful conduct is a question of fact. *State v. Selman*, 433 S.W.2d 572, 575 (Mo. 1968) (question of intent is fact question for the jury). Such factual determinations are reviewed by this Court under the standard set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Under that standard, it was up to the trial court, as fact finder, to determine whether the [public entity's] officials' conduct was knowing or purposeful as those terms are used in section 610.027 when the [public entity] declined to release the [requested public records]. *See, e.g., Spradlin*, 982 S.W.2d at 263 (the record supported trial court's decision there was no purposeful violation of the Sunshine Law); *R.L. Polk & Co. v. Missouri Dep't of Revenue*, 309 S.W.3d 881, 884, 887 (Mo. App. 2010) (same).

*Laut v. City of Arnold*, 491 S.W.3d 191, 193, 196-97 (Mo. banc 2016) (footnote omitted).

**Analysis**

**I. The correct legal standard for § 610.027 findings**

On appeal, the Department does not dispute the trial court's judgment, which concluded that the Department violated the Sunshine Law by redacting the requested documents. Rather, the

Department argues in Point I that the trial court erred in finding that its violation of the Sunshine Law was "knowing" as that term is defined in section 610.027.3. Specifically, the Department contends that the trial court erroneously applied a strict liability standard to assess the Department's "knowing" violation of the Sunshine Law. We disagree.

Section 610.027.3 states:

> Upon a finding *by a preponderance of the evidence* that a public governmental body or a member of a public governmental body has knowingly violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. If the court finds that there is a knowing violation of sections 610.010 to 610.026, the court may order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing a violation. The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.

(Emphasis added.)

"[S]ection 610.027.3 does not impose strict liability. Rather, it requires that the governmental body knowingly violated the Sunshine Law, not merely that it knowingly failed to produce the document, for the trial court to impose a civil penalty or assess costs and attorney's fees." *Laut*, 491 S.W.3d at 199.

Here, the trial court did *not* conclude that the Department merely knowingly failed to produce the records; rather, the trial court expressly concluded in its judgment that "the failure of [the Department] to produce the records . . . [was] a knowing violation of the Sunshine Law." Further, the trial court did *not* apply a strict liability standard for imposing its section 610.027.3 civil penalty and an award of costs and attorney's fees; instead, the trial court's judgment contains numerous references to facts reflecting the trial court's weighing of the evidence to support its ultimate conclusion that the Department's violation was "knowing," expressly noted in the judgment by the trial court as "by a preponderance of the evidence."

5

On appeal, we presume that the trial court "properly considered the relevant portions of the Sunshine Law in rendering its decision as long as that presumption is not rebutted by the record." *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 913-14 (Mo. App. W.D. 2005). The record before us presents no basis to rebut a presumption that the trial court knew and properly applied the correct legal standard (*i.e.*, "knowing" and not strict liability). To the contrary, the record demonstrates that the trial court applied the correct legal standard in its findings related to section 610.027.

Point I is denied.

## II. Substantial evidence to support the trial court's judgment

In Point II, the Department argues that the trial court's judgment concluding that it knowingly violated the Sunshine Law was not supported by substantial evidence.

> A trial court's judgment is not supported by substantial evidence when there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law. When reviewing whether the circuit court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations[,] . . . no contrary evidence need be considered on a substantial-evidence challenge . . . [and] [c]ircuit courts are free to believe any, all, or none of the evidence presented at trial.

*Laut*, 491 S.W.3d at 197 (internal citation and numerous internal quotations omitted).

Here, the trial court's judgment noted that the "clear" case precedent interpreting the subsection relied upon by the Department (*i.e.*, section 610.021(14)) was entirely inconsistent with the "afterthought" position of the Department, whose representative charged with producing the pertinent public records was an inter-agency attorney who had worked on Sunshine Law requests on behalf of the Department for five years, and such requests were "a substantial part of [his] duties" for the previous two years. We agree.

6

Under Missouri law, "public records shall be open to the public for inspection and duplication." § 610.015. "Section 610.021 permits the closing of records, but the General Assembly charged in § 610.011.1 that these exceptions be 'strictly construed.'" *State ex rel. Mo. Local Gov't Ret. Sys. v. Bill*, 935 S.W.2d 659, 664 (Mo. App. W.D. 1996). "Hence, public records must be presumed open to public inspection unless they contain information which clearly fits within one of the exemptions set out in § 610.021." *Id.* One such exemption provides that certain records may be closed or redacted when they are "protected from disclosure by law[.]" § 610.021(14). "The term 'law' has a particular meaning in this context:  It refers to statutes." *Bill*, 935 S.W.2d at 665.  Thus, "[t]he mandate of § 610.015 is that public records be open to the public for inspection and duplication unless a statute prohibits their disclosure." *Oregon Cty. R-IV Sch. Dist. v. LeMon*, 739 S.W.2d 553, 557 (Mo. App. S.D. 1987).

Here, the import of the trial court's judgment is that the Department understood the mandate of case precedent such as *Bill* and *LeMon* when relying upon section 610.021(14), as the Department did, in fact, appropriately cite to *statutory* authority authorizing redaction of social security numbers from its production of records (*see* section 610.035).  Conversely, the trial court noted in its judgment that the Department never purported to rely upon any *statutory* authority for any remaining redactions in the records requested by the ACLU.  This, the judgment makes clear, was not a coincidence.

For example, the trial court found it no coincidence that more than one year after the ACLU requested the records in question and two days before trial, the Department belatedly produced a group of records with un-redacted information on some of the witness applications—even though it had previously steadfastly maintained that it had no obligation to produce any of these records pursuant to the same argument it made at trial.  By concluding that it believed the Department's

non-statutory reliance upon a "penumbral right to privacy" to redact information[4] (under the umbrella of section 610.021(14)) was nothing more than an "afterthought" (even noting that the information requested was "[t]he type of information . . . released by the Department of Revenue Driver's License Bureau on a daily basis and is available online from Casenet to the general public"), the trial court noted its disdain for, and lack of credibility in, the Department's explanation of its conduct.

In response to this evidence in the record, the Department ignores our standard of review and argues that there was evidence contrary to the judgment in that the Department's representative, Briesacher, testified that he didn't "know" he was violating the Sunshine Law when he ordered the redactions in the records. Simply put, the trial court was under no obligation to believe Briesacher, and it is clear that the trial court did not; we must "defer to the circuit court's credibility determinations." *Laut*, 491 S.W.3d at 197 (internal quotation omitted).

"It was up to the trial court to weigh the evidence and resolve the factual question whether the [Department's] conduct fell within the definitions of knowing or purposeful violation under section 610.027." *Id.* at 193. Here, the trial court did just that, and there is substantial evidence in the record supporting the trial court's judgment as to its section 610.027 findings. As in *Laut*, the question before us is not whether the evidence *could* support a determination that the Department's

---

[4] As our ruling today states, the clear precedent interpreting section 610.021(14) (records may be redacted when they are "protected from disclosure by law") is that "[t]he term 'law' has a particular meaning in this context: It refers to statutes." *State ex rel. Mo. Local Gov't Ret. Sys. v. Bill*, 935 S.W.2d 659, 665 (Mo. App. W.D. 1996). But, even as to the Department's "afterthought" argument that the section 610.021(14) protection from disclosure "by law" includes a non-statutory right to privacy, our United States Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). Here, all of the information contained within the records at issue was voluntarily provided to a public entity by individuals not otherwise required to be present at executions, but who desired to be present as a witness to an execution (and at the time the witness applicants submitted their personal information to the Department, none of these persons even attempted to request that their personal information remain private in any way). It is disingenuous to suggest under these circumstances that there was any purported reasonable expectation of privacy relating to the information at issue in this public records request.

8

failure to produce requested records was *not* "knowing," but instead, "whether the trial court committed reversible error in weighing the evidence, making credibility determinations, and determining to the contrary." *Id.* at 202. We conclude that it did not.

Point II is denied.

## Conclusion

For the reasons set forth above, we conclude that the trial court did not err in entering judgment against the Department on the question of civil penalties, costs, and attorney fees. The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Chief Judge

Karen King Mitchell and Gary D. Witt, Judges, concur.