# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 7, 2016 Session

## STATE OF TENNESSEE v. JEROME ANTONIO MCELRATH

**Appeal from the Circuit Court for Obion County**
**No. CC15CR71     Jeff Parham, Judge**

_____

**No. W2015-01794-CCA-R3-CD  -  Filed May 31, 2017**

_____

The State appeals the suppression of evidence by the Obion County Circuit Court.  The defendant, Jerome Antonio McElrath, was arrested on two separate occasions for criminal trespass.  The searches of the defendant's person incident to those arrests produced marijuana in the amounts of 10.1 grams and 4.0 grams, respectively.  After an evidentiary hearing, the trial court granted the defendant's motion to suppress the evidence seized incident to his arrests and dismissed the charges.  The State argues that the arresting officer had probable cause to arrest the defendant and, therefore, the search incident to each arrest was lawful.  Furthermore, the State contends that the evidence was legally obtained because the officer acted in good-faith reliance on information provided by dispatch.  After review, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Tommy A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the appellant, State of Tennessee.

James T. Powell, Union City, Tennessee, for the appellee, Jerome Antonio McElrath.

## OPINION

*Factual and Procedure Background*

On April 8, 2015, Union City Police Officer Chris Cummings was on patrol when he passed a Union City Housing Authority ("Housing Authority") property and noticed the defendant standing outside the community center. Being familiar with the defendant and believing the defendant was on the Housing Authority's barred list, Officer Cummings radioed dispatch to confirm the defendant's status. Upon being advised the defendant was on the March 2015, active barred list, Officer Cummings called for a backup unit to assist.

As the officers approached the defendant's location, the defendant entered the community center and began to run. The officers, however, were able to stop the defendant before he could exit through the rear of the building. Officer Cummings then placed the defendant under arrest for criminal trespass based on his understanding that the defendant was on the active barred list. During a search of the defendant incident to the arrest, Officer Cummings discovered 10.1 grams of marijuana on the defendant's person.

On April 27, 2015, Officer Cummings was again on patrol when he observed what appeared to be a fight taking place on Housing Authority property. When he stopped to investigate, Officer Cummings noticed the defendant was present. Again, still believing the defendant was barred from Housing Authority property, Officer Cummings arrested the defendant for criminal trespass. A search of the defendant incident to that arrest produced 4.0 grams of marijuana on his person.

Subsequently, Officer Cummings learned the defendant had been approved for removal from the barred list on April 11, 2014. Officer Cummings testified that the list he relied on when arresting the defendant was generated and maintained by the Union City Police Department. Per Officer Cummings, dispatch maintains the list and advises officers of an individual's status when requested. Officers do not have access to any lists or paper work maintained by the Housing Authority. The defendant was originally placed on the Housing Authority's barred list for several drug violations. Both the March 11, 2015 and May 11, 2015, barred lists included the defendant.

Lieutenant Melvin Dowell testified that he is responsible for maintaining the barred list on behalf of the Union City Police Department. In order for an individual to be removed from the list, they first submit an application. Each application for removal from the barred list is reviewed by, and must be approved by, the property manager, the Executive Director for the Housing Authority, and the Union City Police Chief. According to Lt. Dowell, once everyone agrees an individual can be removed from the list, he notifies the individual and advises his secretary to update the list. Lt. Dowell testified that the Union City Police Department also maintains a list of individuals who have been removed from the barred list.

Lt. Dowell testified that the defendant should have been removed from the barred list in April 2014. However, due to a clerical error, the defendant was not removed. At the time of the defendant's arrest, dispatch relied on the March 11, 2015, list which showed the defendant as being barred from Housing Authority property. The defendant was placed back on the barred list on May 15, 2015.

Gena Burden, the Executive Director of the Union City Housing Authority, confirmed that the defendant should have been removed from the barred list on April 11, 2014. She also testified that the barred list is maintained by the police department and not the Housing Authority. Finally, Ms. Burden confirmed that the defendant was placed back on the barred list on May 15, 2015.

The defendant was subsequently indicted for two counts of felony possession of marijuana. The defendant filed a motion to suppress the evidence seized as a result of his arrest arguing Officer Cummings lacked probable cause to arrest; therefore, the resulting search and seizure of evidence was unlawful. During the suppression hearing, the State conceded Officer Cummings lacked probable cause to support an arrest but argued that the trial court should "overrule the motion to suppress based upon the good-faith rule established by the U.S. Supreme Court." Despite the State's request, the trial court granted the defendant's motion to suppress concluding that while "[Officer Cummings] did nothing wrong," we "do not have a good-faith exception to the exclusionary rule."

This State appeal followed.

## Analysis

### *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact "unless the evidence preponderates otherwise." *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014) (citing *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013)). Witness credibility, the weight and value of the proof, and the resolution of conflicts in the proof "are matters entrusted to the trial court as the trier of fact." *Id*. at 529; *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Because the defendant prevailed in the trial court, he "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Bell*, 429 S.W.3d at 529. "However, while deference is due the trial court with respect to findings of fact, the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness." *Id*.

3

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 630 (Tenn. 1997). Recognized exceptions to the warrant requirement include consent to search, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and exigent circumstances, *Kentucky v. King*, 563 U.S. 452, 480 (2011). *See State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010) (citing *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005)). It is the State's burden to demonstrate, by a preponderance of the evidence, that a warrantless search passes constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

## I. Probable Cause

Initially, the State argues that Officer Cummings had probable cause to arrest the defendant. However, upon reviewing the record, it is clear that the State did not present this argument during the suppression hearing, and the trial court made no findings of fact relevant to probable cause. Rather, during the suppression hearing, the State argued that Officer Cummings relied in good faith on information, though erroneous, provided to him by dispatch and, therefore, the exclusionary rule should not be used to suppress the drugs found on the defendant. More specifically, when asked by the trial court, "Are we in agreement that but for the mistake, [the defendant] wouldn't have been arrested," the State answered in the affirmative. Furthermore, in concluding his argument to the trial court, the prosecutor stated:

> I have spoken with the [S]tate [A]ttorney [G]eneral's office, explained the scenario here. They thought that this was an excellent vehicle for the Tennessee Supreme Court to re-examine whether or not they would accept the good-faith exception, and that's why we are here.

Based on the State's failure to raise the issue of probable cause during the suppression hearing and the fact that the trial court made no findings concerning probable cause, this Court is precluded from reviewing this issue. Accordingly, this issue is waived. *See State v. Lunati*, 665 S.W.2d 739, 749 (Tenn. Crim. App. 1983) (holding that an issue not litigated in the trial court is waived on appeal); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party

4

responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Additionally, we note, despite the State's waiver of the probable cause issue, this Court has held that erroneous information is insufficient to support an arrest based on probable cause. *See State v. Stephanie Ann Mays*, No. W2005-00575-CCA-R3-CD, 2005 WL 3333428 (Tenn. Crim. App. Dec. 7, 2005), *no perm. app. filed*.

## II. Good-Faith Exception to the Exclusionary Rule

Next, the State urges this Court, as it did the trial court, to hold that Officer Cummings's "good-faith reliance" on the information provided to him by dispatch creates an exception to the exclusionary rule. Relying on numerous United States Supreme Court cases and our Supreme Court's decision of *State v. Reynolds*, 504 S.W.3d 283 (Tenn. 2016), the State urges this Court to conclude that Officer Cummings arrested the defendant based upon his "good-faith reliance on the barred list maintained by the police department" and, therefore, "his conduct was lawful and the exclusion of the evidence is not warranted." Despite our Supreme Court's recent adoption of two good-faith exceptions to the exclusionary rule, the State's argument and the facts in the instant matter do not fall within the narrowly tailored exceptions created by the Court in *Reynolds* and *State v. Davidson*, 509 S.W.3d 156 (Tenn. 2016).

The United States Supreme Court created the exclusionary rule as a remedy for Fourth Amendment violations in *Weeks v. United States*, 232 U.S. 383 (1914). *Reynolds*, 504 S.W.3d at 309. Eight years after *Weeks*, our Supreme Court considered whether evidence discovered in a warrantless search of the defendant's vehicle in violation of article I, section 7 of the Tennessee Constitution was unlawfully admitted at the defendant's trial. *Id*. at 310 (*citing Hughes v. State*, 238 S.W. 588, 594 (1922)). Relying on *Weeks*, the Court adopted the exclusionary rule as a remedy applicable to evidence "produced by violating the constitutional protection against unlawful searches and seizures." *Id.* Then, in 1961, the United States Supreme Court applied the exclusionary rule to the states through the Fourteenth Amendment Due Process Clause. *Id.* (*citing Mapp v. Ohio*, 367 U.S. 463, 655 (1961)). Thus, the exclusionary rule has long been available in Tennessee as a remedy for violations of the federal and state constitutional protections against unreasonable searches and seizures. *Id*.

In order to ensure that the exclusionary rule only serves "the sole purpose . . . to deter misconduct by law enforcement," the United States Supreme Court has adopted and applied several good-faith exceptions to the exclusionary rule in different factual and legal scenarios, where applying the exclusionary rule would not result in appreciable deterrence. *See*, *e.g.*, *Davis v. United States*, 564 U.S. 229, 240 (2011) (holding that the exclusionary rule does not apply when the police conduct a search in objectively

reasonable reliance on binding appellate precedent); *Herring v. United States*, 555 U.S. 135 (2009) (refusing to apply the exclusionary rule when law enforcement officers reasonably relied in good faith on a database managed by the police); *Arizona v. Evans*, 514 U.S. 1, 3–4 (1995) (declining to apply the exclusionary rule when law enforcement officers reasonably relied in good faith on a database managed by the judiciary); *Illinois v. Krull*, 480 U.S. 340 (1987) (declining to apply the exclusionary rule when law enforcement officers reasonably relied in good faith on a statute later declared unconstitutional). However, as the United States Supreme Court has continued to clarify when and how the exclusionary rule should be applied, our Supreme Court has, until recently, declined to adopt any good-faith exceptions to the exclusionary rule.

Recently, however, our Supreme Court reviewed the application of the exclusionary rule and the numerous good-faith exceptions created by the United States Supreme Court. *See State v. Reynolds*, 504 S.W.3d 156 (Tenn. 2016); *State v. Davidson*, 509 S.W.3d 156 (Tenn. 2016). While the Court reviewed many of the exceptions created by the Supreme Court, including one that might be applicable in this matter, *see Herring v. United States*, 555 U.S. 135 (2009), the Court only adopted two narrowly tailored good-faith exceptions. In *Reynolds*, the Court held that an exception to the exclusionary rule "'applies only when the law enforcement officers' action is in objectively reasonable good faith reliance on 'binding appellate precedent' that 'specifically *authorizes* a particular police practice.'" *Reynolds*, 504 S.W.3d at 313 (citing *Davis*, 564 U.S. at 241, 131 S.Ct. 2419). The Court went on to state,

> Like the Minnesota Supreme Court, however, we wish to "note the narrowness of our holding." *State v. Lindquist*, 869 N.W.2d 863, 876 (Minn. 2015). We adopt only the *Davis* good-faith exception, which "represents a small fragment of federal good-faith jurisprudence." *Id*. Furthermore, the *Davis* good-faith exception we adopt applies only when the law enforcement officers' action is in objectively reasonable good faith reliance on "binding appellate precedent" that "specifically *authorizes* a particular police practice." *Davis*, 564 U.S. at 241, 131 S.Ct. 2419. Persuasive precedent from other jurisdictions is not a sufficient basis for applying the *Davis* good-faith exception. *Lindquist*, 869 N.W.2d at 876. Nor does the *Davis* good-faith exception permit law enforcement officers to "extend the law to areas in which no precedent exists or the law is unsettled." *Id*. at 876–77 (internal quotation marks omitted) (quoting *Davis*, 564 U.S. at 250–51, 131 S.Ct. 2419 (Sotomayor, J., concurring in the judgment)). Our holding today merely reflects the reality that the exclusionary rule does not serve its central purpose of deterring police misconduct "when applied to evidence obtained during a search conducted in reasonable reliance on binding precedent." *Id*. at 877. We need not and

6

do not here decide whether to embrace any of the other good-faith exceptions to the exclusionary rule the Supreme Court has adopted. *Id*.

*Id*. at 313.

Then, in *Davidson,* the Court adopted "a good-faith exception for the admission of evidence when a law enforcement officer has reasonably and in good faith conducted a search within the scope of a warrant the officer believes to be valid, but is later determined to be invalid solely because of a good-faith failure to comply with the affidavit requirement of Tennessee Code Annotated sections 40-6-103 and -104 and Tennessee Rule of Criminal Procedure 41(c)(1)." *Davidson*, 509 S.W.3d at 185–86. Again, the Court was careful to define the narrowness of the exception by holding that "we note that Rule 41(g), a procedural rule promulgated by this Court, does not divest this Court of its authority to decide whether a good-faith exception, or any other exception, should be adopted." *Id.* (citing *State v. Reynolds*, 504 S.W.3d 283, 314-15, (Tenn. 2016)).

While the factual scenario in the instant matter would likely fall under an exception to the exclusionary rule in the federal courts, *see Herring v. United States*, 555 U.S. 135 (2009) (refusing to apply the exclusionary rule when law enforcement officers reasonably relied in good faith on a database managed by the police), our Supreme Court has not adopted that exception to the exclusionary rule. Moreover, because our Supreme Court meticulously defined the two narrowly tailored exceptions it has adopted, specifically holding that persuasive precedent from other jurisdictions is not a sufficient basis for applying the "binding appellate precedent" exception, *see Reynolds*, 504 S.W.3d at 313, we are precluded from extending the holding in *Herring* to the instant matter though it appears that the facts and circumstances are directly on point. Accordingly, the State is not entitled to relief.

## Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE

7