

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| WILLA HYNES, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| v. | ) | WD86481(Consolidated with WD86483) |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | Opinion filed:  April 23, 2024 |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
THE HONORABLE DANIEL GREEN, JUDGE**

Division Three:  Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer, Judge and Edward R. Ardini, Jr., Judge

Willa Hynes's son died while in the custody of the Missouri Department of Corrections (the "DOC"). Hynes requested records from the DOC relating to his custody and death pursuant to the Missouri Sunshine Law, section 610.010, *et seq.*[1] The DOC denied her request on the grounds that the records were closed under section 217.075. Hynes initiated this action in the Circuit Court of Cole County (the "trial court"), and filed a motion for summary judgment. The trial court granted Hynes's motion, finding the DOC violated the Sunshine Law by failing to provide her with the requested records. The trial

---

[1] All statutory references are to RSMo 2016 as supplemented through the 2021 Cumulative Supplement.

court held a bench trial, and thereafter entered judgment finding the DOC's violation was knowing and purposeful. The trial court ordered the DOC provide Hynes with the requested records and pay her a monetary penalty in the amount of $5,000, as well as her attorney's fees and costs.

Both parties appeal. The DOC asserts the trial court erred in "declaring" the DOC violated the Sunshine Law, and finding that the violation was knowing and purposeful. Hynes asserts the trial court erred in finding the DOC was not a "law enforcement agency" as that term is used in the Sunshine Law, and in ordering that the DOC could move for a protective order prior to producing the records. For the reasons stated below, we find the trial court did not err in finding the DOC knowingly and purposefully violated the Sunshine Law, but the trial court did err by allowing the DOC to seek a protective order prior to producing the records. In light of our determinations, we find it unnecessary to resolve whether the DOC was acting as a law enforcement agency under the Sunshine Law.

**Legal Background**

To provide context for the facts of this case, we briefly set forth the relevant legal principles.

"It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." § 610.011.1. Accordingly, "[p]ublic records shall be presumed to be open unless otherwise exempt pursuant to the provisions" of chapter 610. § 610.022.5.

Various exemptions allowing for the closure of records are found in section 610.021. One such exemption permits the closure of records relating to "[h]iring, firing,

2

disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded." § 610.021(3). Another exemption permits closure of "[i]ndividually identifiable personnel records, performance ratings or records pertaining to employees . . . ." § 610.021(13). Section 610.021 also contains an exemption allowing a public governmental body to close "[r]ecords which are protected from disclosure by law[.]" § 610.021(14). "The term 'law' has a particular meaning in this context: It refers to statutes"; therefore, under this exemption, "public records [are] to be open to the public for inspection and duplication unless a statute prohibits their disclosure." *ACLU of Mo. Found. v. Mo. Dep't of Corr.*, 504 S.W.3d 150, 155 (Mo. App. W.D. 2016).

Section 610.100 also contains exemptions, including that "investigative reports of all law enforcement agencies . . . are closed records until the investigation becomes inactive." § 610.100.2(2). However, section 610.100 further provides that certain persons "may obtain any records closed pursuant to this section . . . for purposes of investigation of any civil claim or defense, as provided by this subsection." § 610.100.4.

Finally, chapter 217 pertains to the DOC, and section 217.075 addresses offender records, providing that, "All offender records compiled, obtained, prepared or maintained by the [DOC] or its divisions shall be designated public records within the meaning of chapter 610 except:"

> (1) Any information, report, record or other document pertaining to an offender's personal medical history, which shall be a closed record;
>
> . . .

3

(3) Any internal administrative report or document relating to institutional security.

§ 217.075.1.

## Factual and Procedural Background

Hynes's son ("Decedent") died in the custody of the DOC on April 4, 2021. On that date, an employee of the DOC called and advised Hynes that her son had died, that he had "hurt himself," and that the DOC could release no further information regarding the circumstances of his death.

Hynes retained counsel, and on May 4, 2021, her counsel submitted a records request to the DOC pursuant to the Sunshine Law, seeking "all records pertaining to [Decedent's] detention including [the DOC's] investigation of his death on April 4, 2021." Specifically, Hynes requested:

> All videos including surveillance/monitoring video recordings and monitoring and safety/cell check records pertaining to [Decedent] during his detention at Southeast Correctional Center;
>
> All audio recordings including recorded telephone calls;
>
> All photographs and video recordings of [Decedent] or the cell area where he was housed on April 4, 2021;
>
> All documents pertaining to [Decedent's] detention, including but not limited to:
>
> > arrest records; booking records; intake screenings; psychological and/or psychiatric evaluations; medical records; medical reports; incident reports; disciplinary records.
>
> The entire investigation report pertaining to [Decedent's] death on 4/4/21 with all attachments; all reports from outside agencies pertaining to [Decedent's] death; the autopsy report with attachments and toxicology.

4

On May 10th, a DOC records custodian ("Custodian") responded to Hynes's request, stating that the records Hynes sought were "closed pursuant to RSMo. 610.021(3) and 217.75.1(3) [sic]." On May 21st, Hynes's counsel e-mailed Custodian and informed her that she was "incorrect," and that "[p]ursuant to Section 610.100.4, the requested reports and records must be produced to the family of a deceased person or attorney for that family." Hynes's counsel also noted that "the exemption under 610.021(3) does not apply."

On May 24th, Custodian asked a DOC attorney ("DOC Counsel") for assistance in responding to Hynes's Sunshine Law request. After receiving no response to her last e-mail, Hynes's counsel again e-mailed Custodian on May 27th, asking whether the DOC intended to respond to Hynes's Sunshine Law request, and if not, to have legal counsel contact her. On June 1st, Custodian responded that "the video recordings are closed pursuant to 217.075.3 [sic] RSMo., medical records are closed pursuant to 217.075.1(1) and investigation reports are closed pursuant to 610.021(3) and 217.075.1(3)."

On June 4th, Hynes's counsel sent a letter to the director of the DOC, stating that the DOC was not complying with the Sunshine Law and requesting her cooperation. The letter included a legal analysis of Hynes's position as to why she was entitled to the records.[2] On June 14th, DOC Counsel sent Hynes's counsel a "Legal Response" to her Sunshine Law request, along with the DOC's "Public and Confidential Records Policy." In the "Legal Response," DOC Counsel stated that the records were closed pursuant to

---

[2] In that letter, Hynes withdrew her Sunshine Law request for medical records, provided the director with a notarized HIPPA authorization, and requested the DOC produce Decedent's medical records pursuant to §§ 191.227 and 537.021.

section 217.075.1(1) and (3), and therefore protected from Sunshine Law disclosure under section 610.021(14), and were also closed under section 610.021(13) because the investigations into Decedent's death "include the individually identifiable personnel performance data of the employees involved in the events being investigated." DOC Counsel also denied that Hynes was entitled to the records under section 610.100.4, contending that such authority applies to "law enforcement agencies, which the Missouri Department of Corrections is not."

Over the course of the next two months, Hynes's counsel and DOC Counsel engaged in discussions relating to Hynes's Sunshine Law request. The only record the DOC produced during these exchanges was Decedent's uncertified autopsy report.

On August 20, 2021, Hynes filed a Petition for Injunctive and Declaratory Relief in the trial court, alleging the DOC knowingly and purposely violated the Sunshine Law by refusing to disclose the open records she requested.[3] The DOC responded in its answer that it "is not a law enforcement agency for purposes of the Missouri Sunshine Law and in this case, Section 217.075 controls."

On December 2 and 3, 2021, Hynes served discovery requests upon the DOC, which were to be answered within ten days pursuant to the trial court's order. On December 13th,

---

[3] In Count I, Hynes alleged the DOC violated the Sunshine Law. In Count II, she requested injunctive relief requiring the DOC to produce medical records pursuant to section 191.227. After Hynes filed her petition, she was appointed personal representative of Decedent's estate; as a result, the DOC produced the requested medical records to her on October 18, 2021, mooting Count II of the petition.

6

the assistant attorney general ("AAG") representing the DOC[4] sent an e-mail to Hynes's counsel with the subject line, "Resuming clarification dialogue." The AAG stated that, after further review of the case, "it appears that efforts by the [DOC] to clarify the exact nature of your records request were unsuccessful," and that "once we have clarification about your requests, we may be able to identify open records that we can produce." In a December 15th e-mail, Hynes's counsel stated:

> Although I don't understand how you or your client could possibly need such clarification, let me try to assist you. We requested all documents pertaining to [Decedent's] detention and any investigation of his death. This would include all "offender records" which the [DOC] defines as "Any and all information maintained by the department that relates to a specific offender . . ." The "specific offender" in question is [Decedent], who was in the custody and under the care of the Missouri Department of Corrections when he died. The request includes all video and audio recordings and photographs of [Decedent]. We also requested all incident reports, investigation reports, and records pertaining to any investigation into [Decedent's] death.

The deadline for Hynes to file a motion for summary judgment was December 21st, and she filed her motion on that day. On December 22nd, the DOC produced to Hynes "all open records encompassed by [her] December 15th clarified sunshine request of 'all offender records.'" This production included 173 pages of records. The DOC maintained that it had other records responsive to Hynes's request but they were closed so the DOC would not produce them.

In her motion for summary judgment, Hynes asserted the DOC violated the Sunshine Law by failing to produce the requested records, and that the violation was knowing and purposeful. The trial court held a summary judgment hearing, at which Hynes

---

[4] The DOC tendered this matter to the Missouri Attorney General's Office for representation in the litigation.

argued for partial summary judgment. She stated that she was not seeking summary judgment "on the issue of [the DOC's] knowing and purposeful violation" of the Sunshine Law, as the DOC had presented affidavits in response to her summary judgment motion that disputed the violation was knowing, and the trial court "can't make credibility determinations" at the summary judgment stage. At the conclusion of the hearing, the trial court announced that it intended to rule in Hynes's favor on her claim that the DOC violated the Sunshine Law. The trial court instructed Hynes's counsel to draft a proposed judgment, and asked the DOC to provide the authority and proposed language to support that the judgment was appealable. The parties each submitted a proposed judgment; the DOC's proposed judgment included a section as to the judgment's appealability and a provision permitting the DOC to seek a protective order prior to producing the records. The trial court entered judgment granting Hynes's motion for summary judgment, finding:

a. [The DOC] did not act in the capacity of, or function as, a "law enforcement agency," for the purposes of compliance with § 610.100 of the Missouri Sunshine Law;

b. [The DOC] violated the Sunshine Law by denying [Hynes] access to "offender records" and the reports and records pertaining to the investigation of [Decedent's] death;

c. Section 217.075.1 RSMo. does not apply to exempt the records and reports requested by [Hynes] pursuant to Chapter 610 RSMo from disclosure to [Hynes].

The judgment provided that, "Prior to producing any documents in response to this Judgment, [the DOC] may seek a protective order that would be appropriate for documents produced in discovery in a wrongful death case."

8

Additionally, the trial court found "that there remain disputed issues of material fact as to whether [the DOC's] violation of chapter 610 RSMo was done 'knowingly' and/or 'purposely.'" Nonetheless, the trial court concluded its determination that the DOC violated the Sunshine Law was "a distinct judicial unit" and "enter[ed] [its] judgment finding that there [was] no just reason for delay and with the intent that it be immediately appealable" under Rule 74.01(b).

The DOC appealed, and we dismissed the appeal for lack of jurisdiction, finding that the judgment was not a final and appealable judgment because it did not adjudicate a distinct judicial unit. *See Hynes v. Mo. Dep't of Corr.*, 666 S.W.3d 244, 249-50 (Mo. App. W.D. 2023) (relying on *Glasgow Sch. Dist. v. Howard Cnty. Coroner*, 572 S.W.3d 543, 548 (Mo. App. W.D. 2019) (judgment finding the Coroner violated the Sunshine Law was not a final and appealable judgment because it left unadjudicated whether the violation was knowing or purposeful)).[5]

After we dismissed the appeal, the trial court conducted a bench trial on the issues of whether the DOC's violation was knowing or purposeful. Hynes called three witnesses to testify: Custodian, DOC Counsel, and the DOC's general counsel ("General Counsel"). Thereafter, on July 6, 2023, the trial court entered a final judgment incorporating its previous findings, including that the DOC violated the Sunshine Law, section 217.075.1 did not apply to exempt the records Hynes requested, the DOC was not a "law enforcement

---

[5] After the trial court announced its summary judgment decision, but prior to it entering judgment, Hynes's counsel sent e-mails to the DOC and the trial court cautioning that, under *Glasgow School District*, the partial summary judgment was not a final and appealable judgment.

agency" for the purposes of section 610.100, and that prior to producing any documents, the DOC could seek a protective order that would be appropriate for documents produced in a wrongful death case. The trial court also found the DOC "knowingly and purposely violated the Sunshine Law" and ordered it "to pay a civil monetary penalty of $5,000.00 as well as reasonable attorney fees and costs [Hynes] incurred in prosecuting her prevailing claims"; the attorney's fees and costs totaled $55,508.99. The trial court ordered that the DOC provide Hynes "unredacted records requested in her May 5, 2021 Sunshine Law request" within thirty business days from the date of the judgment.

Both parties appeal. The DOC asserts three points of error, and Hynes asserts two. For ease of analysis, we address the DOC's points first.

### The DOC's Point I – Sunshine Law Violation

In its first point, the DOC asserts the trial court erred "in declaring that [the DOC] violated the Sunshine Law by denying Hynes access to 'offender records' and the reports and records pertaining to the investigation of [Decedent's] death and ordering their disclosure because those records are not public records under the Sunshine Law, in that they are documents that relate to institutional security and closed under § 217.075.1(3), RSMo."

#### *Standard of Review*

The DOC contends the standard of review applicable to this point is the standard applicable to court-tried cases; namely, that the judgment will be reversed if no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. The DOC relies on *Scroggins v. Missouri Department of Social Services*,

10

227 S.W.3d 498 (Mo. App. W.D. 2007) for this proposition. *Scroggins*, however, is procedurally distinguishable. The trial court in *Scroggins* conducted a hearing, after which it declared the defendant a "law enforcement agency" under the Sunshine Law. *See* 227 S.W.3d at 500. Here, on the other hand, the trial court's determination that the DOC violated the Sunshine Law was based on Hynes's motion for summary judgment. The trial court granted her motion, finding that section 217.075.1 did not apply to exempt the requested records and the DOC violated the Sunshine Law by refusing to produce them. Although this judgment was interlocutory and thus subject to change prior to the entry of final judgment, *see* Rule 74.04(c)(6)[6], the trial court never set aside or altered its summary judgment determination. Yes, the trial court conducted a trial after granting summary judgment to Hynes, but the trial was solely to resolve the remaining disputed issues— whether the violation was knowing or purposeful—not to re-litigate the issue of whether a violation occurred. Accordingly, we must review the trial court's determination that the DOC violated the Sunshine Law by considering whether the trial court erred in granting summary judgment to Hynes. *See Hootselle v. Mo. Dep't of Corr.*, 624 S.W.3d 123, 135 (Mo. banc 2021) (where the trial court granted partial summary judgment in favor of the plaintiffs on the issue of liability, then conducted a trial on damages, the Missouri Supreme Court reviewed the trial court's liability determination by considering whether the trial

---

[6] "A summary judgment, interlocutory in character, may be entered on any issue, including the issue of liability alone, although there is a genuine issue as to the amount of the damages." Rule 74.04(c)(6); *see also* Rule 74.04(a) (a party seeking to recover on a claim or obtain a declaratory judgment may move for summary judgment "upon all or any part of the pending issues"). Regarding Sunshine Law violations, to be entitled to a civil monetary penalty, attorney's fees, and costs, the plaintiff must prove by a preponderance of the evidence that the violation was knowing or purposeful. *See* § 610.027.3, 4.

court erred in granting summary judgment and applied the applicable summary judgment standard of review).

We review the decision to grant summary judgment *de novo*, applying "the same criteria as the trial court in determining whether summary judgment was proper." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.*; *see also* Rule 74.04(c)(6). "To accomplish this showing, the movant must attach to the motion for summary judgment a statement of uncontroverted material facts that 'state[s] with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue . . . .'" *Green*, 606 S.W.3d at 116 (quoting Rule 74.04(c)(1)). "After the movant makes this submission, the non-movant is required to file a response either admitting or denying the movant's material facts." *Id.* at 117. The non-movant "may also set forth additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs . . . ." Rule 74.04(c)(2).

"Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." *Green*, 606 S.W.3d at 117. "Courts determine and review summary judgment *based on that Rule 74.04(c) record*, <u>not</u> the whole trial court record." *Id.* "[P]arties cannot cite or rely on facts outside the Rule 74.04(c) record." *Id.* (internal emphasis omitted).

12

*Analysis*

The DOC asserts that it did not violate the Sunshine Law in that the records it refused to produce were "documents that relate to institutional security" and thus were "closed under § 217.075.1(3)," which provides that "[a]ll offender records compiled, obtained, prepared or maintained by [the DOC] or its divisions shall be designated public records within the meaning of chapter 610 except . . . [a]ny internal administrative report or document relating to institutional security." The DOC has failed, however, to establish that the trial court's grant of summary judgment was erroneous.

A summary judgment movant "must establish that there is no genuine dispute as to those material facts upon which [she] would have had the burden of persuasion at trial." *Green*, 606 S.W.3d at 116. "[W]hen a governmental body claims that an exception to the general rule of openness applies, the burden of persuasion in a suit seeking disclosure of public records shifts to the governmental body." *Gross v. Parson*, 624 S.W.3d 877, 891 (Mo. banc 2021) (internal marks omitted); *see also* § 610.027.2 ("Once a party seeking judicial enforcement of [the Sunshine Law] demonstrates to the court that the body in question is subject to the requirements of [the Sunshine Law] and has held a closed meeting, record or vote, the burden of persuasion shall be on the body and its members to demonstrate compliance with the requirements of [the Sunshine Law]."). "In other words, '[o]nce it is determined that a governmental body is subject to the Sunshine Law and that it has claimed that a record is closed, the burden is on the governmental body to demonstrate that the Sunshine Law does not require disclosure.'" *Gross*, 624 S.W.3d at 891 (quoting *Laut v. City of Arnold*, 491 S.W.3d 191, 194 (Mo. banc 2016)).

13

Here, Hynes established that the DOC was subject to the Sunshine Law and had claimed the records were closed.[7] Thus, to avoid summary judgment in favor of Hynes, the DOC was required to demonstrate that a genuine issue of material fact existed as to whether the records were closed under section 217.075.1(3).[8] And in order to prevail on appeal, the DOC must make that same showing: it must establish—via the Rule 74.04(c) fact framework—that summary judgment was erroneously granted in that a genuine dispute of material fact existed. *See Green*, 606 S.W.3d at 121 ("whether it be the circuit court addressing summary judgment in the first instance or an appellate court reviewing an entry of summary judgment," that court "need only consult what was properly put before it by way of Rule 74.04(c) paragraphs and responses."). The DOC has not done so.

In its brief on appeal, the DOC does not cite any Rule 74.04(c) paragraph or response to support its claim that the records were "internal administrative report[s] or document[s] relating to institutional security" and thus closed under section 217.075.1(3). Instead, the DOC argues broadly and generally that Hynes's Sunshine Law request "plainly

---

[7] In response to Hynes's statement of uncontroverted material facts, the DOC admitted it was a public governmental body and that it had claimed the requested records were closed.

[8] Although "a claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law," *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993), where a plaintiff claims that a governmental body violated the Sunshine Law by failing to produce open records, the governmental body's response that the records were closed is not an "affirmative defense." "An 'affirmative defense' is defined as a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, ***even if all the allegations in the complaint are true***." *Varsalona v. Ortiz*, 445 S.W.3d 137, 140 (Mo. App. W.D. 2014) (internal marks omitted). By claiming the records are closed, the governmental body is refuting the allegations in the plaintiff's petition; it is not raising an affirmative defense asserting that, even if the plaintiff's allegations are true, it can still avoid liability.

appeared to seek records that related to institutional security and were unambiguously closed by § 217.075.1(3)."[9] To the extent that the DOC does cite the record to support its contention, it is outside the Rule 74.04(c) paragraph-and-response framework: the DOC paraphrases the Legal Response drafted by DOC Counsel in June 2021 and General Counsel's trial testimony, neither of which were Rule 74.04(c) facts (and the latter evidence being adduced after summary judgment had already been granted).

That the DOC does not cite any fact in the summary judgment record to support its institutional-security argument on appeal is consistent with its litigation approach before the trial court. The focus of its response in opposition to Hynes's summary judgment motion was to argue that the DOC's actions did not constitute a *knowing* violation of the Sunshine Law, and that genuine disputes of material fact existed regarding the intended scope of—and the DOC's understanding of—Hynes's Sunshine Law request. The DOC only briefly touched upon any claim that the records were closed as related to institutional security under section 217.075.1(3), and its passing references to this argument were conclusory and unsupported, such as when it stated, "DOC's reliance on § 217.075.1(3) to

---

[9] Although the DOC maintains on appeal—and maintained before the trial court—that the records were "unambiguously" or "plainly" closed under section 217.075.1(3) as "relating to" institutional security, it has failed to acknowledge or address that the phrase "relates to" in the context of Sunshine Law exceptions has been held to be "ambiguous because it is capable of being read differently by reasonably well-informed individuals." *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998). In *Spradlin*, as here, the phrase "relates to" was found in an exemption to the Sunshine Law, and thus the Court was required to "strictly construe[]" the phrase "to ensure that the workings of government be open to the scrutiny of the public." *Id.* at 259. Under a strict construction, the phrase "relates to" in a Sunshine-Law exemption means "relate[s] *directly* to." *Id.* (emphasis added). Thus, in order to prove the records were exempt from disclosure under section 217.075.1(3), it would be necessary for the DOC to show that the records relate directly to institutional security. In a case like this one, the "relatedness" between the requested records and institutional security is not sufficiently obvious to be sustained without factual development.

15

close surveillance records is well-founded, and this reliance does not constitute a knowing violation of the sunshine law." To that end, in response to Hynes's summary judgment motion, the DOC did not include one fact in its statement of additional material facts relating to the institutional-security argument it raises on appeal. In short, the DOC failed to establish—before the trial court and on appeal—that a genuine issue of material fact existed as to whether the records Hynes requested related to institutional security and thus were closed under section 217.075.1(3). Therefore, we cannot find the trial court erred in granting summary judgment in favor of Hynes.[10]

The DOC's Point I is denied.[11]

### The DOC's Points II and III – Knowing and Purposeful Violation

In its second and third points, the DOC asserts the trial court's finding that it knowingly and purposely violated the Sunshine Law was not supported by substantial evidence (Point II) and was against the weight of the evidence (Point III).

*Standard of Review*

"Section 610.027 allows any aggrieved person to seek judicial enforcement of the Sunshine Law and provides the remedies of civil monetary penalties, costs and attorney's

---

[10] To be clear, we do not intend to imply that section 217.075.1(3) could never apply to exempt a DOC record from disclosure. Rather, we solely conclude that the DOC failed to establish trial court error here.

[11] In light of our resolution of this point, we need not address Hynes's first point, in which she asserts the trial court erred in finding the DOC did not function as a "law enforcement agency" for purposes of compliance with section 610.100. As we are affirming the trial court's judgment that Hynes was entitled to the records she requested, we need not determine whether there were additional grounds upon which Hynes was entitled to the records she sought.

16

fees for knowing or purposeful violations of that law." *Laut*, 491 S.W.3d at 197; *see also* § 610.027.3, .4. "Whether the conduct of the [the DOC] brings it within the scope of the statutory definitions of knowing or purposeful conduct is a question of fact." *Laut*, 491 S.W.3d at 196. "Such factual determinations are reviewed by this Court under the standard set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)," i.e., the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Laut*, 491 S.W.3d at 196. "Under that standard, it was up to the trial court, as fact finder, to determine whether [the DOC's] conduct was knowing or purposeful." *Id.*

"A trial court's judgment is not supported by substantial evidence when there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit's judgment as a matter of law." *Id.* at 197 (internal marks omitted). "When reviewing whether the circuit court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations[;] no contrary evidence need be considered on a substantial-evidence challenge and circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* (internal marks omitted).

"A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgement, and a trial court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* (internal marks omitted). "Appellate courts should exercise the power to set aside a decree

17

or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong." *Id.* (internal marks omitted).

Although the Sunshine Law "shall be liberally construed and [its] exceptions strictly construed to promote the public policy of open records," where "the issue is whether a penalty and attorney's fees should be imposed, the portions of the Sunshine Law that allow for imposition of a civil penalty and an award of attorney['s] fees and costs are penal in nature and must be strictly construed." *Id.* at 196 (internal marks omitted).

*Analysis*

The DOC asserts that Hynes produced no evidence that it knowingly or purposely violated the Sunshine Law, and instead "only produced email exchanges where [Hynes's] attorney and MDOC representatives engaged in a dispute over statutory interpretation and application." The DOC contends "there is no evidence that 'if believed, has some probative force' to sustain the circuit court's judgment." We disagree, and find there was substantial evidence in the record that—if believed—would establish a knowing and purposeful violation of the Sunshine Law.[12]

A "knowing" violation of the Sunshine Law "requires proof that the public entity knew that its failure to produce the report violated the Sunshine Law." *Laut*, 491 S.W.3d at 193. "The standard required to prove a 'purposeful' violation under section 610.027 is greater—the party must show that the defendant . . . act[ed] with 'a conscious design, intent,

---

[12] Because we find substantial evidence supported the determination that the DOC's violation was "purposeful," we need not analyze whether the DOC's violation was "knowing." *See Laut*, 491 S.W.3d at 199 (it is a "far greater burden" to prove a purposeful violation than it is a knowing violation).

or plan to violate the law and did so with awareness of the probable consequences.'" *Id.* (internal marks omitted) (quoting *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998)). "A purposeful violation involves proof of intent to defy the law or achieve further some purpose by violating the law." *Id.* at 200.

The trial court could have found from the evidence that the DOC demonstrated a conscious design or plan to violate the Sunshine Law, and that it intended to forestall disclosure of the requested records to make it more difficult for Hynes to pursue a potential claim against the DOC. The DOC was aware that Hynes was seeking records to investigate a civil claim relating to her son's death. The DOC refused to provide Hynes any records—other than an uncertified autopsy report—responsive to her Sunshine Law request, forcing Hynes to file this lawsuit, and then waited until the day after Hynes filed her motion for summary judgment in December to produce 173 pages of the records she had requested back in May. *See ACLU of Mo. Found. v. Mo. Dep't of Corr.*, 504 S.W.3d 150, 156 (Mo. App. W.D. 2016) (the trial court could have found from the evidence that it was "no coincidence that more than one year after the ACLU requested the records in question and two days before trial, the [DOC] belatedly produced a group of records . . . even though it had previously steadfastly maintained that it had no obligation to produce any of these records"); *Buckner v. Burnett*, 908 S.W.2d 908, 911 (Mo. App. W.D. 1995) ("A public official's intentionally forestalling production of public records until the requester sues would be a purposeful violation of Chapter 610 and would be subject to a fine and reasonable attorney fees.").

19

The trial court was not required to believe the testimony of DOC witnesses claiming they did not understand the scope of Hynes's Sunshine Law request until she "clarified" in December that she was seeking Decedent's "offender records," as opposed to her initial request for "records pertaining to [Decedent's] detention," and it was clear from the record the trial court did not find credible the DOC's explanation of its conduct, at one point stating, "I think the inference is something is going on there they [(the DOC)] don't want you [(Hynes)] to find out." *See ACLU of Mo. Found.*, 504 S.W.3d at 156 ("Simply put, the trial court was under no obligation to believe [the DOC's deputy general counsel], and it is clear that the trial court did not").

"[W]e must defer to the circuit court's credibility determinations." *Id.*; *see also Spradlin*, 982 S.W.2d at 263 ("While we may have weighed the evidence differently and arrived at a different conclusion than the trial court, we must adhere to our standard of review and are not free to substitute our own judgment for that of the trial court."). According such deference to the trial court, we find there was substantial evidence from which the trial court could have found the DOC acted with the intent to achieve some purpose by violating the Sunshine Law, namely, to hinder Hynes from pursuing a potential civil claim against the DOC relating to her son's death. Such conduct amounts to a purposeful violation.

Further, we have considered the arguments made by the DOC in its third point, in which it asserts the trial court's judgment was against the weight of the evidence. As explained above, the trial court's finding of a purposeful violation was supported by

substantial evidence. The arguments made by the DOC in its third point do not render that finding against the weight of the evidence.

For these reasons, the DOC's Points II and III are denied.

### Hynes's Point II – Protective Order

In her second point, Hynes asserts the trial court erred in ordering that, prior to producing the requested records, the DOC may seek a protective order that would be appropriate for documents produced in discovery in a wrongful death case. We agree.

No Sunshine Law provision provides a mechanism for a public governmental body to seek a protective order to restrict the public's use of open records. Indeed, such a provision would directly conflict with the public policy behind the Sunshine Law: that all records of public governmental bodies be open and accessible to the public unless otherwise provided by law.[13] *See* § 610.011.1.

While the Missouri Rules of Civil Procedure allow for protective orders where discovery may rise to the level of "annoyance, embarrassment, oppression, or undue burden or expense," Rule 56.01(c), the authorization in this judgment for seeking a protective order did not purport to relate to discovery: it applied to the records that were the subject of this

---

[13] We recognize that the Sunshine Law does allow a governmental body to limit the information provided to the public in certain circumstances, such as authorizing the redaction of information from records. *See Gross*, 624 S.W.3d at 890 ("the Sunshine Law authorizes redaction in certain circumstances"). But such instances involve limiting the disclosure of "closed" information, not records deemed "open" under the Sunshine Law, as the records were determined to be here. *See, e.g.*, § 610.024.1 (where a public record contains material that is both exempt and not exempt from disclosure, "the public governmental body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying"); *see also ACLU of Mo. Found.*, 504 S.W.3d at 156 n.4 ("records may be redacted when they are 'protected from disclosure by law'").

21

Sunshine Law litigation, records which the trial court deemed to be open. Because they were held to be open, the DOC could not have limited their production had it complied with the law and provided the records when initially requested by Hynes. We discern no basis to "reward" the DOC's refusal to produce the records until ordered to do so by a court by allowing the production of the records pursuant to a protective order.

Hynes's Point II is granted.

## Conclusion

The judgment of the trial court is reversed in part and affirmed in part. We reverse the trial court's ruling that, "Prior to producing any documents in response to this Judgment, Defendant may seek a protective order that would be appropriate for documents produced, in discovery in a wrongful death case." We do not address whether the DOC was acting as a "law enforcement agency" as that term is contemplated under the Sunshine Law. In all other respects, the judgment is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

22